**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

HARRIS ATENCIO,

      Defendant - Appellant.

No. 05-2279
(D.N.M No. CR-05-662 JP)

**ORDER DENYING INITIAL EN BANC REVIEW**
**Filed January 17, 2007**

Before **TACHA**, Chief Judge, **KELLY**, **HENRY**, **BRISCOE**, **LUCERO**, **MURPHY**, **HARTZ**, **O'BRIEN**, **McCONNELL**, **TYMKOVICH**, **GORSUCH**, and **HOLMES**, Circuit Judges.

A member of the active court sua sponte called for a poll of the court to determine whether this case would be set for initial en banc review. Judges Tacha, Kelly, Briscoe, Murphy, Tymkovich and Gorsuch voted to grant initial en banc review. All other active members of the court voted to deny. A majority vote being necessary to order en banc consideration, initial en banc consideration is denied.

Entered for the Court
Elisabeth A. Shumaker, Clerk

By:
      Deputy Clerk

No. 05-2279, *United States v. Atencio*

**MURPHY**, Circuit Judge, dissents to the denial of initial en banc consideration by the court with opinion. The opinion is joined by **KELLY** and **BRISCOE**, Circuit Judges:

In *United States v. Booker*, the Supreme Court held that the United States Sentencing Guidelines were incompatible with the Sixth Amendment. 543 U.S. 220, 230-37, 244 (2005). To remedy this incompatibility, the Court excised from the Sentencing Reform Act of 1984 those provisions of the Act that made the Guidelines mandatory. *Id.* at 245-46, 258-65. So modified, the Sentencing Reform Act of 1984 "makes the Guidelines effectively advisory. It requires a sentencing court to consider Guideline ranges, but it permits the court to tailor the sentence in light of other statutory concerns as well, *see* [18 U.S.C.] § 3553(a)." *Id.* at 245-46 (citation omitted); *see also United States v. Bullion*, 466 F.3d 574, 575 (7th Cir. 2006) ("[T]he standard of reasonableness, introduced by the *Booker* decision, confers broad sentencing discretion. The judge must consider the guidelines, but is in no sense bound by them. He is bound only by the statutory sentencing factors, 18 U.S.C. § 3553(a), which are both numerous and vague, giving the judge a great deal of running room.").

This court has previously paid lip service to the notion that, following *Booker*, district courts possess substantial discretion in sentencing under the now-advisory Guidelines. *See United States v. Andrews*, 447 F.3d 806, 811-12 (10th Cir. 2006). Nevertheless, as I have previously noted, serious tension exists

between this court's post-*Booker* precedents regarding appellate review of sentences and that portion of *Booker* holding that the Guidelines are no longer mandatory. *United States v. Mateo*, No. 05-2266, 2006 WL 3775864, at *9-*10 (10th Cir. Dec. 26, 2006) (Murphy, J., joined by Kelly, J., concurring). With the filing today of the panel opinion in *United States v. Atencio*, No. 05-2279, there has been a profound escalation in that tension. Under *Atencio*, the ability of district courts to exercise true discretion and vary from the range set out in the advisory Sentencing Guidelines is subject to significant and unwarranted procedural impediments, thereby threatening the very discretion mandated by *Booker*. Because the procedural impediments imposed on the district courts by *Atencio* are inconsistent with *Booker*, are not supported by case law or other governing authority, and are bad policy, I respectfully dissent from the denial of initial hearing en banc. *See* Fed. R. App. P. 35 (providing for hearing or rehearing en banc in cases involving questions of exceptional importance).

*Atencio* imposes two significant procedural requirements on the imposition of a sentence outside the range set out in the advisory Sentencing Guidelines. First, a district court must provide pre-hearing notice, pursuant to Federal Rule of Criminal Procedure 32(h), of its intent to vary from the advisory range set out in the Guidelines, which notice must identify each and every ground the district court is considering in support of such a sentence. *Atencio*, No. 05-2279, slip op. at 7-12 (10th Cir. Jan. __, 2007). Second, to support any variance from an advisory Guidelines range, a district court must undertake a detailed analysis of

2

the propriety of the variance, with specific reference to the factors set out in 18 U.S.C. § 3553(a). *Atencio*, No. 05-2279, slip op. at 14-19. Each of these procedural limitations is inconsistent with the post-*Booker* scheme; each occasions a significant, untoward burden on the district courts in this Circuit.

According to *Atencio*, the requirement of detailed and specific pre-hearing notice in every case in which the § 3553(a) factors might justify a sentence outside the advisory range is supported by Federal Rule of Criminal Procedure 32(h) and *Burns v. United States*, 501 U.S. 129 (1991). *Atencio*, No. 05-2279, slip op. at 7-11. Neither of these authorities is helpful, however, inasmuch as each addresses a specific pre-*Booker* phenomenon: unexpected "departures" "from a generally binding Guidelines range based on information not contained in the presentence report or the parties' sentencing submissions." *United States v. Walker*, 447 F.3d 999, 1007 (7th Cir. 2006).

Rule 32(h) by its plain language applies only to "departures," a distinct sentencing mechanism that continues to apply post-*Booker*. *United States v. Dozier*, 444 F.3d 1215, 1217-18 (10th Cir. 2006).[1] As the *Atencio* panel

---

[1]The Federal Rules of Criminal Procedure provide as follows:

Before the court may *depart* from the applicable sentencing range on a ground not identified for *departure* either in the presentence report or in a party's prehearing submission, the court must give the parties reasonable notice that it is contemplating such a *departure*. The notice must specify any ground on which the court is contemplating a *departure*.

(continued...)

3

recognizes, however, what is at issue in this case is not a "departure" from a mandatory Guidelines range. *Atencio*, No. 05-2279, slip. op. at 9-10. Instead, this case involves a sentence outside an *advisory* Guidelines range based on a balancing of the sentencing factors set out in § 3553(a), a sentencing option commonly labeled a "variance." *Id.* at 10. Because, as the *Atencio* panel recognizes, "departures" and "variances" are analytically distinct, and because Rule 32(h) does not refer to "variances," it is quite odd for the *Atencio* panel to conclude district courts must comply with the dictates of Rule 32(h) before "varying" from the advisory Guidelines range. Indeed, the *Atencio* panel's imposition of a notice requirement in the circumstances of this case seems more akin to rulemaking than adjudication of the meaning of Rule 32(h).

Nor does the Supreme Court's decision in *Burns* support imposition of a notice requirement on district courts in the circumstances of this case. The prefatory portion of *Burns* notes it is entirely based on the "revolution[ary]" and "mechanical" nature of Guideline sentencing. 501 U.S. at 132-35.[2] Because of

---

[1](...continued)
Fed. R. Crim. P. 32(h) (emphasis added).

[2]In this regard, the Supreme Court noted:

> The Sentencing Reform Act of 1984 revolutionized the manner in which district courts sentence persons convicted of federal crimes. *See generally Mistretta v. United States*, 488 U.S. 361, 363-367 (1989). Before the Act, Congress was generally content to define broad sentencing ranges, leaving the imposition of sentences within those ranges to the discretion of individual judges, to be exercised on
> (continued...)

4

the unique changes to sentencing occasioned by the Sentencing Reform Act of 1984, the Court in *Burns* concluded "procedural reforms," including specific, advanced notice of an intent to depart, were necessary to fully implement a mandatory Guidelines scheme. *Id.* at 133, 138-39.

The considerations that drove the decision in *Burns* are now mere history after the decision in *Booker*. In the *Booker* aftermath, sentencing has returned to the less formal practice that existed prior to the Sentencing Reform Act of 1984. *Bullion*, 466 F.3d at 575; *cf. Burns*, 501 U.S. at 133 ("'In pre-guidelines practice, factors relevant to sentencing were often determined in an informal fashion. The informality was to some extent explained by the fact that particular offense and offender characteristics rarely had a highly specific or required sentencing consequence.'" (quoting U.S.S.G. § 6A1.3, official commentary)). In the post-*Booker* world, all parties are inherently on notice that (1) the once-mandatory Guidelines are now advisory, and (2) any deviation from the Guideline range will

---

[2](...continued)
a case-by-case basis. Now, under the "guidelines" system initiated by the Act, district court judges determine sentences based on the various offense-related and offender-related factors identified by the Guidelines of the United States Sentencing Commission. *See* 18 U.S.C. §§ 3553(a)(4), (b). . . . The only circumstance in which the district court can disregard the mechanical dictates of the Guidelines is when it finds "that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission . . . ." 18 U.S.C. § 3553(b).

*Burns v. United States*, 501 U.S. 129, 132-33 (1991).

5

be premised on at least one of the factors listed in § 3553(a).  Accordingly, criminal defendants can claim no surprise as to the facts upon which a district court will rely to vary from the Guidelines.  Thus, *Burns* simply does not support the *Atencio* panel's imposition of a notice requirement to situations in which a district court determines the § 3553(a) factors dictate a sentence outside the advisory Guidelines range.

Nor is the rule set out in *Atencio* good policy.  The result will be delay and needless additional expense.  Sentencing judges normally schedule sentencing hearings at the time of conviction, whether by verdict or plea.  For many good reasons, district court judges frequently prepare for sentencing hearings within days of the hearing, not weeks.  This newly proposed notice requirement will likely have one of two consequences: (1) trial judges will be required to prepare for sentencing hearings many weeks beforehand; or (2) sentencing will proceed in two stages in all cases where the judge might possibly consider a sentence outside the range based on the factors set out in § 3553(a).  Moreover, trial judges may begin requiring the parties to submit extensive pre-sentence memoranda in many, if not most, cases well before the sentencing hearing and address therein *every possible* aggravating and mitigating factor.  As a consequence, this new notice requirement may very well slow down and complicate the sentencing process which, post-*Booker*, should be simpler and more informal.

Equally at odds with the sentencing discretion returned to district courts by *Booker* is the *Atencio* panel's new requirement that to support a "variance" the

6

district court must specifically explain, with reference to the factors set out in § 3553(a) why the "variance" is appropriate. *Atencio*, No. 05-2279, at 14-19. This court has previously indicated that at sentencing a district court need not "march through § 3553(a)'s sentencing factors," nor does this court "demand that the district court recite any magic words to show that it fulfilled its responsibility to be mindful of the factors that Congress has instructed it to consider." *United States v. Rines*, 419 F.3d 1104, 1107 (10th Cir. 2005) (quotation omitted); *see also United States v. Kelley*, 359 F.3d 1302, 1305 (10th Cir. 2004) (holding that this court does not require any kind of "ritualistic incantation" on the part of the district court to establish its consideration of a legal issue (quotation omitted)). Although we have required district courts to consider the factors in § 3553(a) in exercising its post-*Booker* sentencing discretion, this court has never required district courts "to explain on the record how the § 3553(a) factors justify the sentence." *United States v. Lopez-Flores*, 444 F.3d 1218, 1222 (10th Cir. 2006). Instead, as long as a district court is aware of its obligation to consider the numerous and vague sentencing factors set out in § 3553(a), and as long as the district court actually considers the arguments made by the parties at the sentencing hearing, the district court's decision as to an appropriate sentence is entitled to substantial deference.

The second procedural requirement is completely at odds with these principles. *See* Fed. R. App. P. 35(a)(1) (recognizing the appropriateness of en banc review when "necessary to secure or maintain uniformity of the court's

7

decisions"). The developing case law in this Circuit on the question of appellate review of sentences can only be described as hostile to the advisory Guidelines scheme mandated by *Booker*. *Mateo*, 2006 WL 3775864, at *10 (Murphy, J., joined by Kelly, J., concurring) (noting this court's recent precedents, which establish some kind of sliding scale under which district courts are required to offer greater justifications the farther a sentence varies from the advisory Guidelines range, can only be understood as "attempt[ing] to force the district courts to hew as close to the Guidelines range as possible"). With the panel decision in *Atencio*, this court has taken its hostility to the advisory Guidelines system mandated by *Booker* to its logical (or, perhaps, illogical) pinnacle: *any* deviation from the range set out in the purportedly advisory Guidelines range must be specifically justified by the district court, with reference to the particular § 3553(a) factors invoked. *Atencio*, No. 05-2279, slip op. at 14-19.

After the panel decision in *Atencio*, it is now as difficult as it possibly could be for a district court in this circuit to impose a sentence outside the range set out in the Guidelines. "Although many might bemoan the decision in *Booker*, it is the law of the land. The Guidelines are no longer mandatory and it is improper for this court to impose a system of appellate review that seeks to return this circuit, *de facto*, to a mandatory system." *Mateo*, 2006 WL 3775864, at *10 (Murphy, J. joined by Kelly, J., concurring). For all those reasons set out in my separate opinion in *Mateo*, the second procedural requirement set out by the *Atencio* panel is completely at odds with *Booker*.

8

In conclusion, the panel decision in *Atencio* represents the ultimate imposition of formality, stringency, and complexity in sentencing. *Atencio* injects serious, untoward obstacles to the exercise of the very sentencing discretion by the district courts that *Booker* was intended to revive. The imposition of a sentence outside the advisory Guideline range in reliance on the discretionary factors in § 3553(a) will become painful and complex and will systemically slow the sentencing process. It cannot be overstated that the *sole* job of this court is to determine whether a sentence imposed by the district court is unreasonable. *Booker*, 543 U.S. at 260-65. That review should not entail the kind of *de novo* review underlying *Atencio*. Instead, as long as it is clear the district court understood and considered the arguments of the parties, the district court's sentencing decision should be affirmed unless it is so outside the bounds of reason as to be considered unreasonable. Because the panel decision in *Atencio* is completely at odds with these principles, and because the en banc court has chosen not to intervene to forestall these deficiencies, I respectfully dissent from the denial of hearing en banc.

PUBLISH

**January 17, 2007**

**UNITED STATES COURT OF APPEALS**

**Elisabeth A. Shumaker**
**Clerk of Court**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

     Plaintiff - Appellee,

v.

No. 05-2279

HARRIS ATENCIO,

     Defendant - Appellant.

**Appeal from the United States District Court**
**for the District of New Mexico**
**(D.C. No. CR-05-662 JP)**

Susan B. Dunleavy, Assistant Federal Public Defender, Office of the Federal Public Defender, Albuquerque, New Mexico for the Defendant - Appellant.

David N. Williams, Assistant United States Attorney (David C. Iglesias, United States Attorney, Office of the United States Attorney, with him on the brief) Albuquerque, New Mexico for the Plaintiff - Appellee.

Before **HENRY**, **LUCERO**, and **McCONNELL**, Circuit Judges.

**LUCERO**, Circuit Judge.

Harris Atencio appeals his sentence of 84 months' imprisonment for assault resulting in serious bodily injury. Although the district court properly calculated

the range under the United States Sentencing Guidelines at 37 to 46 months' imprisonment, it used its discretion under United States v. Booker, 543 U.S. 220 (2005), to impose a 38-month upward variance from that range based on considerations listed in 18 U.S.C. § 3553(a). It also imposed a special condition that Atencio register as a sex offender. Because the court failed to give notice of its intent to vary the sentence above the advisory range and did not adequately explain its reasons for the variance, we **REVERSE** and **REMAND** for resentencing. We also **REVERSE** the sex-offender registration requirement due to the district court's failure to provide advance notice of its consideration of this special condition and **REMAND** for reconsideration with notice.

**I**

In March 2005, Atencio was living with Richelle Montoya, with whom he had one child. According to investigative reports, Montoya decided to leave Atencio on March 10, 2005 because of his alcohol use, mistreatment of her children, and violent abusiveness toward her. One night, after Atencio and his cousin left the family home to go drinking and gambling, Montoya and several of her family members gathered up Montoya's belongings and took her three children to the home of her mother, Judy Montoya, in Torreon, New Mexico. Montoya left a note for Atencio informing him that she was ending the relationship and instructing him not to contact her or her family.

At approximately 4 a.m. the next morning, Atencio appeared at Judy Montoya's home with his cousin and a friend. Noticeably intoxicated, he banged loudly on a glass door, demanding to see Montoya. When no one answered, Atencio broke the door and entered the house carrying an axe he found outside. He was immediately confronted by Judy Montoya and Montoya's sister, Vivian Montoya. Atencio swung the axe toward Judy, but Vivian stepped between them and was struck on the right side of her head with the blade of the axe. Atencio's companions then restrained him and carried him back to their vehicle.

Vivian Montoya was rushed by emergency helicopter to a hospital in Santa Fe, New Mexico, where she was treated for massive head trauma, a fracture of the right orbital bone, an open fracture of the right temporal lobe, hemorrhaging of the right eye, and facial lacerations. These injuries, deemed life-threatening, required several surgeries and thirty-three stitches.

On April 15, 2005, Atencio was indicted on one count of assault resulting in serious bodily injury in violation of 18 U.S.C. §§ 113(a)(6) and 1153. He pled guilty to this charge the same day. His Presentence Report ("PSR") assigned a base offense level of 14 for the crime. Four levels were added because Atencio had used a dangerous weapon, and five were added because the victim sustained serious bodily injury. Three levels were subtracted for Atencio's acceptance of responsibility for his criminal conduct. The PSR also placed Atencio in criminal history category II due to his prior conviction for sexual abuse of a minor in

1999.  The adjusted offense level of 20, combined with the criminal history category of II, resulted in an advisory guideline range of 37 to 46 months' imprisonment.  However, the PSR also noted that a criminal history category of II was possibly underrepresentative because it did not reflect a prior juvenile adjudication for aggravated battery, assault, and possession of a deadly weapon.  It recommended that the court consider increasing the criminal history category by one level to account for the adjudication, which would yield an advisory guideline range of 41 to 51 months.

During the sentencing hearing held on August 15, 2005, the district court found that Atencio knowingly, voluntarily, and intelligently pled guilty to the information.  It adopted the recommendations of the PSR, applying an offense level of 20 and a criminal history category of II to calculate an advisory Guidelines range of 37 to 46 months' imprisonment.  Rather than assigning a sentence within this range, however, the court decided to impose a sentence "independent of the United States Sentencing Guidelines."  After considering the factors set forth in § 3553(a), it sentenced Atencio to 84 months' imprisonment, a 38-month upward variance from the Guidelines range.[1]  Prior to the hearing, the

---

[1] There has been some inconsistency in our circuit's post-<u>Booker</u> sentencing nomenclature.  In <u>United States v. Calzada-Maravillas</u>, 443 F.3d 1301 (10th Cir. 2006), for example, we referred to a sentence increase based on § 3553(a) factors as a "non-guideline departure" and an increase based on application of U.S.S.G. Chapter Four as a "guideline departure."  <u>Id.</u> at 1304.  In <u>United States v. Dozier</u>, 444 F.3d 1215 (10th Cir. 2006), we termed a sentencing

(continued...)

court gave no notice to either party of its intention to vary upward from the advisory range of 37 to 46 months.

At the hearing, the court focused on two factors to support the variance: (1) Atencio's criminal history, including his abuse of women; and (2) the violence and seriousness of Atencio's crime.[2] In finding that Atencio regularly abused women, the district court purportedly adopted the statements of both the PSR and the Addendum. The Report and Addendum, however, contradicted each other;

---

[1](...continued)
increase an "upward departure" where the district court based the enhancement on victim impact statements – an arguably permissible ground under § 3553(a) but not in Chapters Four or Five of the Sentencing Guidelines. Id. at 1217.

We now clarify that when a court reaches a sentence above or below the recommended Guidelines range through application of Chapters Four or Five of the Sentencing Guidelines, the resulting increase or decrease is referred to as a "departure." When a court enhances or detracts from the recommended range through application of § 3553(a) factors, however, the increase or decrease is called a "variance." Our most recent discussion of post-Booker sentencing terminology adopts these definitions. See United States v. Cage, 451 F.3d 585, 591 n.2 (10th Cir. 2006).

[2] During one portion of the sentencing hearing, the judge mistakenly believed that the maximum sentence for the offense of conviction was 20 years' imprisonment. The court announced its intention "to impose a sentence of half [of the maximum], or 10 years, which, frankly, may be on the low side, to provide just punishment for what he did in this case." Later in the proceedings, the prosecutor pointed out that the maximum sentence was actually ten years' imprisonment. Id. at 16. The court then announced:

I will change the sentence from the proposed 120 months to a term of 84 months which I think, again, is a very light sentence given the defendant's criminal history of continuous abuse, violent abuse of women, and the exceptionally violent circumstances of the offense to which he pled guilty for which I'm imposing sentence today.

- 5 -

whereas the Report characterized Atencio's relationship with Montoya as one of repeated abuse, the Addendum filed by Atencio stated that "Mr. Atencio admitted to striking, or pushing Richelle one time, and not to a pattern of beating her as indicated." At the outset of the sentencing hearing, the court asked if the parties had any objections to the factual materials in the PSR, and whether there was any need for an evidentiary hearing to resolve disputed facts. Neither Atencio nor the Government made any objections or moved for an evidentiary hearing. Despite the contradictory statements, the court proceeded to adopt the findings of both the Report and the Addendum in determining that Atencio's criminal history score did not account for his regular abuse of women. It also repeatedly stressed Atencio's prior sexual abuse conviction, but explicitly stated that it did not rely on his prior juvenile adjudication in varying upward.

In addition to sentencing Atencio to 84 months' imprisonment, the court imposed a sex-offender registration requirement as a condition of supervised release. It did not notify Atencio that it was contemplating this requirement.

Atencio now appeals his sentence of 84 months' imprisonment and the sex-offender registration requirement. This court has jurisdiction to consider his appeal under 18 U.S.C. § 3742(a).

**II**

Post-<u>Booker</u>, we review sentencing decisions for reasonableness, which has both procedural and substantive components. <u>Cage</u>, 451 F.3d at 591 (10th Cir. 2006). In setting a procedurally reasonable sentence, a district court must calculate the proper advisory Guidelines range and apply the factors set forth in § 3553(a). See <u>id.</u>; <u>United States v. Kristl</u>, 437 F.3d 1050, 1055 (10th Cir. 2006). It must also afford defendants their rights under the Federal Rules of Criminal Procedure. See <u>Dozier</u>, 444 F.3d at 1217-18. A substantively reasonable sentence ultimately reflects the gravity of the crime and the § 3553(a) factors as applied to the case. <u>Cage</u>, 451 F.3d at 594.

Because we reverse on procedural reasonableness, we do not reach the substantive reasonableness of Atencio's sentence. Atencio attacks two procedural elements of the variance imposed at sentencing: (1) the court's failure to provide notice of its intention to impose an upward variance, and (2) the adequacy of its explanation for varying based on § 3553(a) factors.

**A**

In 2001, Congress amended Rule 32 of the Federal Rules of Criminal Procedure to include part (h), which affords parties the right to advance notice of a district court's intent to depart from the applicable Guidelines range, and of the grounds for such departure.[3] This rule codifies the Supreme Court's decision in

_____

[3] Fed. R. Crim. P. 32(h) states:

(continued...)

- 7 -

<u>Burns v. United States</u>, 501 U.S. 129, 138 (1991), holding that Rule 32 – which afforded defendants the opportunity to comment on sentencing matters – implicitly required such notice.[4]  The Court reasoned that failure to provide notice would be "inconsistent with Rule 32's purpose of promoting focused, adversarial resolution of the legal and factual issues relevant to fixing Guidelines sentences," <u>id.</u> at 137**,** and expressed concern that:

> At best, under the Government's rendering of Rule 32 [to not require notice], parties will address possible sua sponte departures in a random and wasteful way by trying to anticipate and negate every conceivable ground on which the district court might choose to depart on its own initiative.  At worst, and more likely, the parties will not even try to anticipate such a development; where neither the presentence report nor the attorney for the Government has suggested a ground for upward departure, defense counsel might be reluctant to suggest such a possibility to the district court, even for the purpose of rebutting it.  In every case in which the parties fail to anticipate an unannounced and uninvited departure by the district court, a critical sentencing determination will go untested by the adversarial process contemplated by Rule 32 and the Guidelines.

---

[3](...continued)
Before the court may depart from the applicable sentencing range on a ground not identified for departure either in the presentence report or in a party's prehearing submission, the court must give the parties reasonable notice that it is contemplating such a departure. The notice must specify any ground on which the court is contemplating a departure.

[4] Language requiring the court to provide parties an opportunity to comment on "matters relating to an appropriate sentence" is now incorporated in Fed. R. Crim. P. 32(i)(1)(C).

Id.  To effectuate the adversarial sentencing process contemplated by Rule 32, the Court required advance notice of sua sponte departures under the then-mandatory Guidelines, and of the reasons for departure.

We continue to apply the notice requirements of Burns and Rule 32(h) to post-Booker sentencing departures.  In Dozier, we made clear that "[w]e do not question the viability of Rule 32(h) and Burns after Booker" in reversing a district court's upward departure where it failed to give adequate notice of its intent to depart.  444 F.3d at 1217.  Specifically, we held that "Rule 32(h) survives Booker and requires a court to notify both parties of any intention to depart from the advisory sentencing Guidelines as well as the basis for such departure when the ground is not identified in the presentence report or in a party's prehearing submission."  Id. at 1218.

Similarly, in Calzada-Maravillas, we reversed a sentencing departure, determining that the district court erred by failing to give the defendant notice of the ground on which the court contemplated departure.  443 F.3d at 1303.  Calzada-Maravillas again emphasized the importance and function of prior notice: "To provide the parties the opportunity to hone their legal arguments, the district court must provide advance notice of its intent to depart."  Id. at 1304 (emphasis in original; citations omitted).

Our caselaw thus leaves no doubt that we require Rule 32(h) notice for sentencing departures.  In this case, however, the district court imposed a

variance and not a departure,[5] explicitly stating that it relied on § 3553(a) factors

to impose a non-Guidelines sentence above the advisory range.

Four of our sister circuits – the Second, Fourth, Sixth, and Ninth – have

held that Rule 32(h) notice applies to variances. See United States v. Cousins,

2006 WL 3435608 *6 (6th Cir. 2006) (published opinion); United States v. Anati,

457 F.3d 233, 237-38 (2d Cir. 2006); United States v. Evans-Martinez, 448 F.3d

1163, 1167 (9th Cir. 2006); United States v. Davenport, 445 F.3d 366, 371 (4th

Cir. 2006). Four – the Third, Seventh, Eighth, and Eleventh – have ruled that

such notice is not required for variances. See United States v. Irizarry, 458 F.3d

1208, 1212 (11th Cir. 2006); United States v. Nation, 451 F.3d 189, 198-99 (3d

Cir. 2006); United States v. Walker, 447 F.3d 999, 1007 (7th Cir. 2006); United

States v. Long Soldier, 431 F.3d 1120, 1122 (8th Cir. 2005). Circuits holding that

Rule 32(h) notice is not required for variances have generally reasoned that

because post-Booker defendants are on notice that the district court must consider

---

[5] The district court in Calzada-Maravillas did not indicate whether it adopted a departure or variance. Because the failure to notice the departure warranted reversal, we declined to reach the issue of the notice required for a variance. 443 F.3d at 1304.

We note, however, that while Dozier explicitly held that Rule 32(h) notice is required for what we there termed departures, the facts of Dozier indicate that the sentence incorporated what we now call a variance. 444 F.3d at 1217 (describing a sentencing enhancement based on victim impact statements); see supra note 1. (Dozier was written before we drew a distinction between § 3553(a)-based increases and Guidelines-based increases in Calzada-Maravillas and Cage.) As such, Dozier has arguably already held that Rule 32(h) notice applies to variances. At any rate, we need not dwell on the semantics of that case, as we explicitly make this holding today.

the § 3553(a) factors, the "unfair surprise" rationale underlying <u>Burns</u> does not apply. <u>See, e.g.</u>, <u>Irizarry</u>, 458 F.3d at 1212; <u>Nation</u>, 451 F.3d at 196; <u>Walker</u>, 447 F.3d at 1007.

We take the view of the Second, Fourth, Sixth and Ninth Circuits. <u>Burns</u> describes Rule 32's purpose as "promoting focused, adversarial resolution of the legal and factual issues relevant to fixing Guidelines sentences." 501 U.S. at 137. Although <u>Booker</u> has rendered the Guidelines advisory, it has not affected <u>Burns</u>' mandate for "focused, adversarial resolution of the legal and factual" bases for sentencing; nor does it negate the benefits of notice in furthering this end. Defendants are, indeed, constructively "on notice" of § 3553(a) factors post-<u>Booker</u>. Under the previous sentencing regime, however, they were equally aware of the specified circumstances for departure under the Guidelines. <u>See</u> U.S.S.G. §§ 4A1.3, 5K1.1-2.23. Moreover, for both departures and variances, notice of contemplated grounds allows parties to focus their attention on those considerations most relevant to the sentencing court's decision, facilitating the "adversarial process" and "meaningful opportunity to be heard" contemplated by <u>Burns</u>, 501 U.S. at 137-38. We therefore hold that Rule 32(h) applies to variances as well as to departures, requiring courts to give advance notice of their intent to sentence above or below the identified advisory Guidelines range.

Atencio's PSR indicated that an upward departure might be warranted because his criminal history score failed to take into account his prior juvenile

adjudication for aggravated battery, assault, and possession of a deadly weapon.
The Government argues that this constitutes notice. However, Rule 32(h) and
Burns leave no doubt that the defendant has a right to know in advance the very
ground upon which the district court might upwardly depart or vary. Here, the
district court explicitly disavowed reliance on Atencio's juvenile adjudication –
the only ground identified as a potential reason for departure in the PSR. As such,
Atencio's PSR did not provide notice of the grounds for the upward variance, and
the district court erred by failing to give advance notice of its intent to vary and its
contemplated reasons.

Having decided that Rule 32(h) error occurred, we must now determine the
standard of review to apply in light of Atencio's failure to object to the lack of
notice at sentencing. Since our decision in United States v. Bartsma, 198 F.3d
1191, 1198 (10th Cir. 1999), we have held that a failure to object to Rule 32(h)
error at sentencing does not constitute a forfeiture. However, the en banc court
today overrules Bartsma, requiring a defendant to object to the lack of notice at
sentencing to preserve his claim of Rule 32(h) error for appellate review.[6]

_____

[6] A panel decision may overrule a point of law established by a prior panel
through an en banc footnote by obtaining authorization from all active judges on
the court. See, e.g., United States v. Meyers, 200 F.3d 715, 721 n.3 (10th Cir.
2000). This opinion has been circulated to all active members of this court, and it
is our unanimous decision to overturn the point of law articulated in Bartsma that
a defendant does not forfeit his right to appeal by failing to object to Rule 32
notice error at sentencing. (Although Bartsma referred to failure to object as a
"waive[r]," 198 F.3d at 1199, the proper term for failure to make a timely

(continued...)

- 12 -

Upon objecting to the lack of notice, the defendant should then move for a continuance. We will generally assume that a reasonable continuance cures Rule 32(h) error, rendering it harmless by allowing parties adequate time to prepare to contest or support the variance – just as they could have, had they received notice prior to the sentencing hearing. This procedure both promotes the "focused, adversarial resolution of the legal and factual [sentencing] issues" contemplated by Burns, and avoids inefficient appellate litigation by permitting the court below to cure its error. 501 U.S. at 137. Although we expect that a district court will grant a continuance in most cases of Rule 32(h) error, we note that failure to grant a continuance will not always require reversal of a variance. For example, a modest variance in light of a district court's consideration of the generalized

---

[6](...continued)
assertion of a right is "forfeiture." See United States v. Olano, 507 U.S. 725, 733 (1993).) Bartsma reasoned that application of harmless error review even in the absence of objection below was justified because the "complete lack of notice . . . short-circuited the significance of any opportunity to comment." 198 F.3d at 1198. This logic would be persuasive if requiring defendants to object to the lack of notice would also require them to contest the underlying reasons for the relevant sentencing decision. However, objection to the lack of notice alone does not necessitate addressing the underlying merits; a defendant can object merely by pointing out the Rule 32(h) error and requesting a continuance. Because parties should now be well aware that Rule 32(h) entitles them to advance notice of certain sentencing decisions, requiring objection at sentencing to the lack of notice is neither unfair nor burdensome. For these reasons, the en banc court now overrules Bartsma and holds that parties must object to Rule 32(h) error at the time of sentencing. However, to avoid unfairness to the parties, the en banc court applies this new rule prospectively.

§ 3553(a) factors might neither entail unfair surprise nor profit from advance notice, and may thus constitute harmless error.

Because our settled practice under Bartsma obviated the need for objection to Rule 32(h) error at sentencing, the en banc court applies the new rule prospectively. See note 6, supra. We thus review Atencio's claim for harmless error, although future claims of Rule 32(h) error will be reviewed for plain error in the absence of objection. The lower court's failure to provide notice diminished Atencio's ability to meaningfully comment on sentencing considerations. Moreover, the 38-month upward variance imposed was significant, and notice would have helped Atencio contest its bases. Accordingly, the Rule 32(h) error was not harmless.

**B**

The parties dispute the adequacy of the district court's § 3553(a) analysis. In support of its variance, the district court identified two categories of supporting factors: (1) the underrepresentation of Atencio's criminal history, and (2) the violence of the offense.

**1**

Atencio's PSR revealed three prior incidents of criminal behavior: (1) a juvenile adjudication for which little information was available and which the court explicitly did not consider; (2) a petty misdemeanor for shouting profanities when drunk; and (3) a 1998 conviction for sexual abuse of a minor. Atencio was

placed in criminal history category II due to the three points he received for the sexual abuse conviction. In conducting its § 3553(a) analysis, the district court then used this same conviction to explain its upward variance.

Our pre-Booker law precluded sentencing courts from departing upward based on a conviction already used to increase the criminal history level. See United States v. Yates, 22 F.3d 981, 988 (10th Cir. 1994). Yates, of course, does not survive Booker wholly intact; that result would be inconsistent with the advisory nature of the Guidelines. Moreover, at issue in the instant case is a § 3553(a) variance, not a Guidelines departure. Nonetheless, because the Guidelines carefully account for prior crimes through criminal history categories, a district court varying or departing on the basis of a conviction already considered in the criminal history score must at least explain why that score fails to reflect the seriousness of the prior crime. Allowing a district court to vary or depart in the absence of such explanation would amount to unjustified double-counting of the prior crime, and also hinder this court's ability to review the reasonableness of the variance or departure. See United States v. Sanchez-Juarez, 446 F.3d 1109, 1117 (10th Cir. 2006) ("We are therefore persuaded that our pre-Booker requirement that district courts provide sufficient reasons to allow meaningful appellate review of their discretionary sentencing decisions continues to apply in the post-Booker context."). Explanation of a variance is especially important for reasonableness review in light of the presumptively reasonable

effect given to the Guidelines in this circuit. See Cage, 451 F.3d at 594-95. Such explanation need not be overly detailed, but should at least address why the criminal history level fails to adequately account for the prior crime or crimes.

The court also relied on Atencio's history of physical abuse of women in determining that the Guidelines underrepresented his criminal history. The PSR indicates that Montoya told investigating agents "that she had been a repeated victim of violent physical abuse at the hands of the defendant." It further states that Atenico admitted to investigating agents that he and Montoya had a "tumultuous relationship" and that he "had been physically violent with [Montoya] to the point of striking and beating her." Atencio objected to this characterization of their relationship prior to the sentencing hearing, and the Probation Department consequently attached the First Addendum to the PSR stating it would amend Atencio's admission to investigating agents to say the following: "Mr. Atencio admitted to striking, or pushing [Montoya] one time, and not to a pattern of beating her as indicated in this section."

At sentencing, the court asked if the parties had any objections to the factual statements in the PSR or desired an evidentiary hearing to resolve disputed facts. After neither Atencio nor the Government objected, the court adopted the findings of both the PSR and the contradictory Addendum in finding that Atencio regularly abused women, and did not address the conflict.

We have previously held that failure to object to a disputed fact at the sentencing hearing constitutes forfeiture, despite prior submission of a written objection. See United States v. Toledo, 985 F.2d 1462, 1471 (10th Cir. 1993). We thus review this claim for plain error, which "occurs when there is (1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." United States v. Torres-Duenas, 461 F.3d 1178, 1180 (10th Cir. 2006) (quotations omitted).

Rule 32 states that a court "must – for any disputed portion of the presentence report or other controverted matter – rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing." Fed. R. Crim. P. 32(i)(3)(B). Because Atencio's characterization of one incident of abuse in the Addendum controverted the depiction of regular abuse of Montoya in the PSR, the district court plainly erred in relying on the allegedly regular abuse in varying the sentence, but failing to resolve the conflict. This error deprived Atencio of his substantial due process right to a ruling on the disputed issue, which may have undermined a significant basis for the variance and resulted in a lower sentence. Adoption of contradictory factual statements at sentencing also seriously affects the fairness, integrity, and public reputation of judicial proceedings. Thus, we hold that the district court committed plain error in failing to follow Rule 32(i)(3)(B). See United States v. Wolfe, 435 F.3d 1289, 1300 (10th Cir. 2006)

- 17 -

(remanding for reconsideration where the district court "did not explain how it made [a] factual finding[] in light of contradictory statements contained in the PSR," even where the defendant failed to object to the adoption of inconsistent statements at the sentencing hearing).

**2**

The district court also cites the violence of the offense in support of the variance. However, Atencio's PSR had already made two adjustments to the base offense level to account for the seriousness and consequences of his crime, adding four points for the use of a "dangerous weapon" and five points for the "serious" extent of bodily injury sustained by the victim. These nine points were one point less than the maximum cumulative adjustment permissible under the Guidelines.

The district court emphasized Atencio's use of an axe and the extent of injury to Vivian Montoya, but did not explain why the nine point adjustment failed to capture the violence and heinousness of the offense. Basing the variance on these factors was thus analogous to the double-counting of the prior rape conviction, discussed in Section II(B)(1), supra. For the same reasons stated in that analysis – the facilitation of reasonableness review and the impropriety of double-counting – we require the district court to articulate why the upward adjustments failed to account for the violence of the crime. We thus agree with the First Circuit that:

> When a factor is already included in the calculation of the guidelines sentencing range, a judge who wishes to rely on that same factor to impose a sentence above or below the range must articulate specifically the reasons that this particular defendant's situation is different from the ordinary situation covered by the guidelines calculation.

United States v. Zapete-Garcia, 447 F.3d 57, 60 (1st Cir. 2006).  Because the district court did not articulate such reasons, its emphasis on the violence of Atencio's crime fails to support the upward variance.[7]

## III

Finally, we consider the propriety of the district court's imposition, without advance notice, of sex-offender registration as a condition of supervised release. In Bartsma, we required a district court to provide notice of a special condition on supervised release when that condition impacts the defendant's liberty and is "not on its face related to the offense charged."  198 F.3d at 1199-1200 (citing United States v. Edgin, 92 F.3d 1044, 1049 (10th Cir. 1996)).  Bartsma held that sex-offender registration meets the Edgin standard in that the charged offense was not

---

[7] Atencio argues that the district court impermissibly enhanced the sentence on the basis of gender.  The Guidelines unequivocally state that race, sex, national origin, creed, religion and socio-economic status are factors that "are not relevant in the determination of a sentence."  U.S.S.G. § 5H1.10; see also United States v. Neary, 183 F.3d 1196, 1198 (10th Cir. 1999).  In response, the Government insists that the sentence is not based on gender. Of course, reliance on gender would be impermissible, but we do not need to reach the issue.  Given our reversal for resentencing on other grounds, it is unnecessary for us to analyze the court's remarks on point.

a sex crime.  On that basis, the <u>Bartsma</u> panel reversed the imposition of a sex-offender registration requirement in the absence of notice.  <u>Id.</u>

Atencio failed to object to the lack of notice of imposition of a sex-offender registration requirement.  Given our prospective application of footnote six, <u>supra</u>, our review of Atencio's claim remains under harmless error.  Because the district court failed to provide notice to Atencio of the potential imposition of sex-offender registration requirements in a non-sexual offense context, we cannot say the Rule 32(h) error was harmless.  We reverse the imposition and remand for sentencing upon prior notice.

**IV**

We **REVERSE** the district court's sentencing decision and **REMAND** for resentencing consistent with this opinion.