**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**July 24, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

MANUEL TRUJILLO, a/k/a Manny,

Defendant-Appellant.

No. 06-1501
(D.Ct. No. 05-cr-00374-EWN-21)
(D. Colo.)

**ORDER AND JUDGMENT**[*]

Before **TACHA**, Chief Circuit Judge, and **BARRETT** and **BRORBY**, Senior
Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination of

this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1.9(G). The case is

therefore ordered submitted without oral argument.

Appellant Manuel Trujillo pled guilty to one count of conspiracy to possess

---

[*] This order and judgment is not binding precedent except under the
doctrines of law of the case, *res judicata* and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

with intent to distribute and to distribute 500 grams or more of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(ii) and 846.[1]  He now appeals his sixty-month sentence on grounds his sentence is unreasonable under 18 U.S.C. § 3553(a) because, in granting his request for a downward departure based on his terminal illness, the district court sentenced him to a sixty-month sentence rather than a term of home detention or a lesser term of imprisonment.  We exercise jurisdiction pursuant to 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291 and affirm Mr. Trujillo's sentence.

## I.  Factual Background

As stipulated by Mr. Trujillo, an investigation began in July 2003 involving several individuals involved in drug trafficking, including members of a gang known as the "Gallant Knights Insane."[2]  Between June 15 and July 2, 2005, as part of the ongoing investigation, authorities intercepted several calls between Victor Valdez and Mr. Trujillo which established Mr. Trujillo began purchasing multi-ounce quantities of cocaine from Mr. Valdez.

---

[1]  This appeal is related to another appeal before this court, *United States v. Lucero*, No. 06-1414, in which Adam Lucero was also indicted regarding the same drug trafficking investigation.  However, our dispositions in each case are written separately given the facts and sentencing issues involved are comparatively distinct.

[2]  The indictment brought forty drug trafficking and related charges against twenty-three defendants; count one implicated Mr. Trujillo.

## II. Procedural Background

The final superceding indictment charged Mr. Trujillo with distribution of five kilograms or more of powder cocaine and fifty grams or more of crack cocaine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(ii), and (b)(1)(A)(iii), and 846. After his arrest, Mr. Trujillo was released on bond so he could receive medical treatment for a pre-existing liver condition. He then began associating with his former gang members and violated the conditions of his release by: 1) failing to appear for his pre-trial proceedings in the instant case; 2) violating his parole in a state case; and 3) failing to maintain contact with his federal probation officer or notify her of new felony charges pending against him when he was arrested in the company of other gang members. Following these violations, Mr. Trujillo was taken into federal custody and then transferred to the Jefferson County Detention Center where he received medical attention for his liver disease.

Ultimately, Mr. Trujillo entered a guilty plea; in his plea agreement, he agreed to plead guilty to the lesser offense of distributing 500 grams or more of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(ii) and 846. The government and Mr. Trujillo also stipulated that he suffers from Hepatitis C and chronic liver disease and "obtained opinions from his treating physicians that his medical condition is terminal" and "that a pre-sentence evaluation of [his]

medical condition is appropriate and necessary to determine the extent to which a departure may be warranted under § 5H1.4." R., Vol. 1, Doc. 972 at 4-5.

Following Mr. Trujillo's guilty plea, a probation officer prepared a presentence report and arrived at a base offense level of 30 and a two-level enhancement for obstruction of justice based on his failure to appear for the pre-trial proceedings after being released on bond. However, the probation officer reduced his offense level by three levels for acceptance of responsibility, for a total offense level of 29, which, together with a criminal history category of VI, resulted in an advisory United States Sentencing Guidelines ("Guidelines" or "U.S.S.G.") range of 151 to 188 months imprisonment.

Relying on a review of Mr. Trujillo's medical records and discussion with a counselor in the Jefferson County Detention Center, the probation officer also detailed Mr. Trujillo's medical condition, confirming he suffers from chronic, advanced liver disease for which he has received medical treatment and noting a downward departure under U.S.S.G. § 5H1.4 for his physical condition might be appropriate.[3] Neither party objected to the presentence report.

_____

[3] The probation officer also noted Mr. Trujillo's belief he was receiving inadequate medical treatment while incarcerated at the Jefferson County Detention Center. However, nothing in the record suggests Mr. Trujillo would receive inadequate treatment at a federal facility after his sentencing.

Prior to the sentencing hearing Mr. Trujillo filed a motion for downward departure under § 5H1.4, explaining his terminal liver disease constituted an extraordinary physical impairment which warranted supervised release for the purpose of residing with his mother-in-law, or for an unspecified "short term of imprisonment." At the sentencing hearing, a medical doctor treating Mr. Trujillo at the Jefferson County Detention Center testified Mr. Trujillo suffered from severe, advanced liver disease related to Hepatitis C and had a life expectancy of a few years to under five years.[4] Based on this testimony, Mr. Trujillo renewed his request for a downward departure under § 5H1.4 for the purpose of allowing him to reside at home with his mother-in-law rather than serve a prison sentence.

> In response, the district court stated:
>
> I'm more interested in how ... Mr. Trujillo deals with the breach of faith with this court when he was allowed for this very reason to be released on pretrial detention in the face of overwhelming evidence and in the face of serious involvement by him, and he disappeared.
>
> I think he's manipulated the Court. I don't doubt that the doctor says he doesn't have long to live. That's sad, but that's no reason for me to let him loose, on home detention or any other non-custody arrangement.

R., Vol. 2 at 14. The government, in opposing Mr. Trujillo's request to remain at

---

[4] The doctor also testified it would be difficult for Mr. Trujillo to work because of his illness and that he must be housed by himself because the disease is contagious and he has episodes of bleeding and bouts of excreting body fluids which might transmit the disease to other people.

home, pointed out he was released on bond because of his medical condition but absconded without government approval and began associating with his former gang members. Nevertheless, it did not oppose a reduction in his sentence term based on his medical condition. It further recommended a departure under U.S.S.G. § 5K1.1 for a ninety-one- to ninety-five-month sentence based on Mr. Trujillo's assistance in the case. The government also explained medical treatment at a federal facility like the one in Rochester, Minnesota, which has an affiliation with the Mayo Clinic, or others associated or affiliated with medical facilities would be available during his incarceration, as well as hospice care through a compassionate release program. However, the government explained that to be eligible for compassionate release hospice care Mr. Trujillo must have a medical diagnosis of a life expectancy of six months or less at the time of his request and that he could make such a request at a future date, which the government would not oppose.

In sentencing Mr. Trujillo, the district court adopted the undisputed calculations of the presentence report, considered the applicable Guidelines, and discussed the sentencing factors under 18 U.S.C. § 3553(a). In so doing, the district court pointed to Mr. Trujillo's criminal history category of VI, noting it was "most serious" under the Guidelines and that it would be difficult to "imagine circumstances under which a man or woman with this criminal history would not

be incarcerated." R., Vol. 2 at 27-28. In discussing the sentencing factors under 18 U.S.C. § 3553(a), the district court found the most significant factors in Mr. Trujillo's case included the need for the sentence to reflect the seriousness of his offense and to protect the public from his future crimes. In support of these findings, the district court recounted the fact Mr. Trujillo obtained release on bond based on his plea about his deteriorating health but then failed to follow the conditions of his pre-trial release, in part by involving himself in further crimes by being arrested in the company of his former gang members. The district court explained that based on this conduct it had "less sympathy" for a departure based on his terminal illness.

After discussing Mr. Trujillo's conduct during his release, the district court acknowledged Mr. Trujillo's substantial assistance to the government, agreeing it warranted a reduction in his sentence to ninety-one to ninety-five months. Turning to Mr. Trujillo's request for a downward departure under U.S.S.G. § 5H1.4, it found he suffered from Hepatitis C and a terminal liver disease. Recognizing the extraordinary circumstance of Mr. Trujillo's terminal illness and noting the government did not oppose some degree of additional departure, the district court found such an illness warranted a departure as an impairment under U.S.S.G. § 5H1.4, but explained it did not justify a sentence of probation or "a sentence other than a sentence of incarceration, when all of the statutory purposes

of sentencing are considered." R., Vol. 2 at 32. After balancing all the criteria discussed, the district court imposed a sentence of sixty months imprisonment and noted its "intention" for Mr. Trujillo to "spend the rest of his life in prison for the protection of society." *Id.*

## III. Discussion

On appeal, Mr. Trujillo asserts the district court "imposed an unreasonable sentence by sentencing [him] to sixty months of incarceration and denying his request for a home detention based on his terminal illness that constituted an extraordinary physical impairment pursuant to [U.S.S.G.] § 5H1.4." Apt. Br. at 1. In support, he points to the district court's intention for Mr. Trujillo to spend the rest of his life in prison even though it found he qualified for a downward departure under § 5H1.4. Pointing out he received a five-year sentence even though his life expectancy is under five years, Mr. Trujillo argues, "[t]he United States Code does not authorize a life sentence for the crime [he] plead guilty to and therefore the intention of the court in imposing what amounts to and was intended to be a life sentence is unreasonable." *Id.* at 11. Without further discussion he also summarily contends, "[t]he sentence was also unreasonable as it was greater than necessary to comply with the factors set forth in 18 U.S.C. § 3553(a)." *Id.*

We begin our discussion by clarifying that a sentence above or below the recommended Guidelines range based on an application of Chapters Four or Five of the Guidelines is referred to as a "departure," while a sentence above or below the recommended Guidelines range through application of the sentencing factors in 18 U.S.C. § 3553(a)[5] is called a "variance." *United States v. Atencio*, 476 F.3d 1099, 1101 n.1 (10th Cir. 2007). It is evident Mr. Trujillo is now also claiming his sentence is unreasonable under the § 3553(a) factors based on the same illness he previously raised to support his downward departure request under U.S.S.G. § 5H1.4. While Mr. Trujillo may not have previously framed his objections expressly in the context of a variance under § 3553(a), we do not require a defendant to make such an objection in order to preserve a claim his sentence is

---

[5] 18 U.S.C. § 3553(a) provides, in part, the court shall consider:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
(2) the need for the sentence imposed--
    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
    (B) to afford adequate deterrence to criminal conduct;
    (C) to protect the public from further crimes of the defendant; and
    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
(3) the kinds of sentences available; ...
(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
(7) the need to provide restitution to any victims of the offense.

unreasonably long under those factors. *See United States v. Torres-Duenas*, 461 F.3d 1178, 1183 (10th Cir. 2006), *cert. denied,* ___ S. Ct. ___, 2007 WL 1854536 (U.S. Jun. 29, 2007) (No. 06-7990). Instead, we review for reasonableness the sentence's length, as guided by the factors in 18 U.S.C. § 3553(a). *See id.* These factors "include the nature of the offense and characteristics of the defendant, as well as the need for the sentence to reflect the seriousness of the crime, to provide adequate deterrence, to protect the public, and to provide the defendant with needed training or treatment ...." *United States v. Kristl*, 437 F.3d 1050, 1053 (10th Cir. 2006).

We require reasonableness in two respects: "the length of the sentence, as well as the method by which the sentence was calculated." *Id.* at 1055 (emphasis omitted). In determining whether the district court properly applied the Guidelines, we review its legal conclusions de novo and its factual findings for clear error. *Id.* at 1054. We have also held "the sentencing factors set forth in 18 U.S.C. § 3553(a) must be considered by the district court itself when imposing a sentence." *United States v. Sanchez-Juarez*, 446 F.3d 1109, 1115 (10th Cir. 2006).

> [W]here a defendant has raised a nonfrivolous argument that the
> § 3553(a) factors warrant a below-Guidelines sentence and has
> expressly requested such a sentence, we must be able to discern from
> the record that the sentencing judge did not rest on the guidelines
> alone, but considered whether the guidelines sentence actually

conforms, in the circumstances, to the statutory factors.

*Id*. at 1117 (quotation marks, alterations and citation omitted).


With these principles in mind, we turn to Mr. Trujillo's health, which is but one of the factors the district court was required to consider together with the other § 3553(a) factors. In this case, it is clear the district court weighed Mr. Trujillo's terminal illness with the other § 3553(a) factors, such as the serious nature of his offense and his other characteristics and history, including his extensive criminal history, placing him in the highest criminal history category. The district court also weighed Mr. Trujillo's health against the need for his sentence to provide adequate deterrence, to protect the public, and to provide him with needed treatment. In that regard, the district court participated in a discussion about Mr. Trujillo receiving medical and hospice care during his incarceration, repeatedly highlighted Mr. Trujillo's continued criminal activity after his release for the purpose of receiving medical care, and indicated the need to place Mr. Trujillo in prison for "the rest of his life" for "the protection of society." Thus, it is clear the district court reasonably believed Mr. Trujillo's criminal conduct during his release pending trial demonstrated: 1) his strong propensity to continue his criminal activity despite his terminal condition and medical care needs; and 2) the need to protect the public from his ongoing criminal activity. Based on these factors, together with the other factors

considered, including the assurance of medical care while incarcerated, we cannot say the district court's rejection of Mr. Trujillo's request for supervised release, presumably under the care of his mother-in-law, was unreasonable. While Mr. Trujillo suggests he essentially received a "life sentence" for his drug crime, he in fact received a downward departure related to his health which resulted in his receiving a sentence significantly less than what his conduct in the instant crime warranted without such a departure. Thus, Mr. Trujillo has not demonstrated his illness, when viewed in light of the other § 3553(a) factors, is sufficiently compelling for the purpose of determining that a sentence of sixty months imprisonment is unreasonable under the circumstances presented.

IV. Conclusion

For the foregoing reasons, we **AFFIRM** Mr. Trujillo's sentence.

**Entered by the Court:**

**WADE BRORBY**
United States Circuit Judge