FILED
United States Court of Appeals
Tenth Circuit

October 19, 2007

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

KAREN K. WASSON,

Defendant-Appellant.

No. 07-5038

(N.D. Oklahoma)

(D.C. No. 06-CR-171-01-CVE)

**ORDER AND JUDGMENT**[*]

Before **KELLY**, **MURPHY**, and **O'BRIEN**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The court, therefore, honors the parties' requests and orders the case submitted without oral argument.

## I. Introduction

Defendant Karen Wasson pleaded guilty to three counts of theft, embezzlement, or misapplication by a bank employee in violation of 18 U.S.C.

---

[*]This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

§ 656, arising out of her employment with Bank of America. Considering only the conduct to which Wasson pleaded guilty, Bank of America suffered a $60,000 loss. Nevertheless, considering both charged and related conduct, the Presentence Report ("PSR") concluded the actual loss to Bank of America was $339,809.88. Wasson filed a written objection to the PSR, arguing it incorrectly included uncharged conduct which did not result in an actual loss to the bank. The district court denied the objection. Wasson made a timely appeal to this court. Exercising jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742, this court **affirms**.

## II. Background

Wasson was employed by Bank of America for fourteen years in Wellington, Florida.[1] In her capacity as senior personal banker, Wasson was authorized to directly submit loans for bank customers and access customer Certificates of Deposits. She also had access to the General Ledger ("GL") account, which consists of the bank's funds and is routinely used to cover loan disbursements when customers need immediate funds.

In August of 2004 Wasson embezzled, stole or misapplied Bank of America funds which resulted in this conviction. Wasson previously sold her house but discovered that her home equity line of credit with the bank had not been closed.

---

[1]This case was transferred from the Southern District of Florida to the Northern District of Oklahoma pursuant to Fed. R. Crim. P. 20(a).

She borrowed $50,000 against the line of credit to consolidate her personal debts. When the title company involved in the sale of her home discovered this loan, she was advised that the account must be closed. To do so, Wasson cashed in a Bank of America customer's $50,000 CD. To cover the depleted CD, Wasson transferred funds from the GL account to replenish the CD account. In addition to the $50,000, Wasson stole $10,000 from Bank of America; $7,000 in the form of a cashier's check which she used to pay off her American Express account and $3,000 in cash. To hide this transaction, she used GL funds and misappropriated a customer's CD to clear the GL account.

The PSR also took into account two other, uncharged incidents in which Wasson misappropriated funds. As a result of unauthorized loans, the PSR calculated an additional loss of $279,809.88. Specifically, Wasson issued a cashier's check to Todd Minikus on July 29, 2004, for $150,197.57. The funds for this loan came from the GL account. However, Bank of America had not yet approved the loan. When, after a hurricane-related delay, the loan application materials came through, Wasson realized Minikus' collateral was only sufficient to support a $97,500 loan. In order to clear the GL account, Wasson used a $200,030.80 CD belonging to a Bank of America customer, transferring the money into the GL account.

Wasson objected to the use of the Minikus loan to calculate the total loss, claiming it was not relevant conduct under the sentencing guidelines because

there was no actual or intended loss.[2] Minikus has since signed loan documents and has agreed to pay the entire $150,197.57. In rejecting this argument, the district court found that at the time Wasson's offense was detected, the bank had not recovered any of its loss. Further, the defendant did not mitigate the loss. Only through Bank of America's efforts and Minikus' cooperation is the bank expected to recoup its losses.

## III. Discussion

### A. Standard of Review

Post-*Booker*, this Court reviews sentencing decisions for abuse of discretion, asking whether it is reasonable under the 18 U.S.C. § 3553(a) factors. *United States v. Garcia-Lara*, No. 06-3054, 2007 WL 2380991, at *1 (10th Cir. Aug. 22, 2007). Reasonableness has procedural and substantive components. *United States v. Atencio*, 476 F.3d 1099, 1102 (10th Cir. 2007). For a sentence to be procedurally reasonable, the district court must consider, inter alia, a properly calculated guideline range. *Id.* Wasson challenges only the method by which the district court calculated her advisory guidelines range; she makes no argument that the length of the sentence imposed was unreasonable. Thus, she alleges only procedural unreasonableness. *See, e.g.*, *United States v. Romero*, 491 F.3d 1173,

---

[2]Wasson does not challenge the PSR's consideration of a similar "loan" she issued to Delories Yin in which the bank sustained a loss of $129,112.31. Wasson acknowledges Bank of America incurred an actual loss as Yin has refused to return the funds or make any payments.

1175–76 (10th Cir. 2007). In reviewing the district court's application of the Sentencing Guidelines, this court reviews factual findings for clear error and legal determinations de novo. *United States v. Serrata*, 425 F.3d 886, 906 (10th Cir. 2005).

B. *Amount of Loss*

Pursuant to United States Sentencing Guideline § 2B1.1(b)(1), Wasson's offense level was affected by the value of loss caused by her criminal conduct. Under the guidelines, "loss" constitutes both actual and intended loss and is calculated as the greater of the two. U.S.S.G. § 2B1.1, cmt. n.3(A). Actual loss, which is the only loss relevant here, is defined as "the reasonably foreseeable pecuniary harm that resulted from the offense." *Id*. § 2B1.1, cmt. n.3(A)(i). "Reasonably foreseeable pecuniary harm" is defined as "pecuniary harm that the defendant knew or, under the circumstances, reasonably should have known, was a potential result of the offense." *Id*. § 2B1.1 cmt. n.3(A)(iv).

The base offense level for convictions under 18 U.S.C. § 656 is based on the amount of loss. Twelve points are added to the base offense level for losses in excess of $200,000, as was the case here. U.S.S.G. § 2B1.1(b)(1)(G). Loss can be reduced by "the money returned, and the fair market value of the property returned and the services rendered, by the defendant or other persons acting jointly with the defendant, to the victim before the offense was detected." *Id*. § 2B1.1, cmt. n.3(E)(i).

On appeal, Wasson renews her claim that the district court erred in using the Minikus loan to calculate the loss Bank of America incurred. She argues the Minikus loan cannot constitute actual loss because she did not know, nor should she have known, the bank would sustain a loss of $150,197.57 as the result of her actions. Wasson contends that because Minikus' loan was later approved for a lesser amount, the loan application appeared viable to Wasson's "trained eye." She was therefore advancing a loan based on a reasonable assumption that it would be approved. Wasson further claims that because the bank did not, in fact, lose money from the transaction, the district court's finding of actual loss is clearly erroneous.

Wasson's arguments are unavailing. First, at the time her theft was discovered, Bank of America was exposed to the full loss of the $150,197.57 Wasson advanced to Minikus. No loan documents had been signed and Minikus was under no obligation to pay back the "loan." Wasson's argument is further belied by her actions; upon realizing that Minikus' collateral was insufficient she cashed a CD, belonging to a Bank of America customer, worth over $200,000 and transferred the money into the GL account from which the Minikus "loan" was funded. As a trained banker, Wasson should have known she was subjecting her employer to a loss by advancing funds on a loan which had not yet been approved and then attempting to cover her tracks by shifting funds.

Wasson's contentions that Minikus' agreement to pay his loan resulted in no loss to Bank of America must also fail. Wasson cannot benefit from a third party's cooperation and willingness to pay the loss. Under § 2B1.1, cmt. n.3(E)(i) the loss can only be reduced if the defendant *herself*, not some third party, paid the loss *before* the crime was detected. Minikus only began paying the loan after Wasson's misapplication of bank funds was detected. As this court has held, there is no credit against a loss when payments are made after the detection of the offense. *United States v. Swanson*, 360 F.3d 1155, 1169 (10th Cir. 2004); *see also United States v. Janusz*, 135 F.3d 1319, 1324 (10th Cir. 1998) ("[T]he purpose of the loss calculation under the Sentencing Guidelines is to measure the magnitude of a crime at the time it was committed."). Minikus' subsequent loan payments, therefore, are irrelevant to the calculation of loss.

## IV. Conclusion

The Bank of America was exposed to actual loss on the Minikus "loan" at the time Wasson's crimes were detected. Accordingly, the district court properly considered the Minikus loan in calculating the actual loss to Bank of America and properly calculated Wasson's advisory guidelines range. The sentence imposed by the district court is hereby **affirmed**.

ENTERED FOR THE COURT

Michael R. Murphy
Circuit Judge