**F I L E D**

**UNITED STATES COURT OF APPEALS**

**February 27, 2007**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

GERONIMO CASTELLON,

Defendant - Appellant.

No. 06-1124

(D. Colorado)

(D.C. No. 05-CR-00062-EWN)

**ORDER AND JUDGMENT***

Before **TACHA,** Chief Circuit Judge, **PORFILIO** and **ANDERSON**, Circuit
Judges.

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist in the determination

of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is

therefore ordered submitted without oral argument.

Defendant and appellant Geronimo Castellon appeals his conviction and

sentence, following a jury trial, on one count of possession with intent to

---

*This order and judgment is not binding precedent except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

distribute a quantity of marijuana, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(D), and one count of conspiracy to possess with intent to distribute a quantity of marijuana, in violation of 21 U.S.C. § 846. Castellon was sentenced to forty-six months' imprisonment, followed by three years of supervised release. He timely appealed, and we affirm his conviction and sentence.

## BACKGROUND

Castellon became acquainted with Nathan Cotsford in 2003. Cotsford lived with his common-law wife, Jamie Schneider, and their two-year-old son at 1374 Fulton Way in Aurora, Colorado. Castellon asked Cotsford if he (Cotsford) wanted to make some money by going to California and bringing back some drugs. While there was some conflicting testimony as to how much money Castellon offered to Cotsford to take the trip, it was possibly as much as $10,000.

Cotsford's father-in-law accordingly dropped Castellon and Cotsford at the Denver airport, where they bought one-way tickets to Los Angeles on Frontier Airlines. Cotsford testified that Castellon bought the tickets, and that he used an identification card in the name of Richardo Regla-Campos. At trial, a Frontier Airlines employee corroborated this information, testifying that Frontier's business records indicated that a Nathan Cotsford and a Richardo Regla-Campos purchased one-way tickets from Denver to Los Angeles.

Cotsford further testified that he was carrying large amounts of cash in his pockets on the trip, and that, when questioned about it by airport security employees, he told them a story Castellon had created—that they were going to California to buy a car.

Upon arrival in Los Angeles, Castellon and Cotsford bought a Jeep Grand Cherokee. The two men also counted the money, at a motel or at someone's house,[1] and then gave it to an Hispanic male. Castellon and Cotsford then picked up two red and black duffel bags at the house of someone Castellon knew. Cotsford testified he knew the bags contained marijuana.

Cotsford and Castellon then drove back to Colorado with the duffel bags of marijuana in tow. Cotsford drove the Jeep and Castellon drove a different car, a gold Mercedes. When they arrived back in Colorado, they unloaded the duffel bags at Castellon's house in Aurora. Cotsford testified at trial that Castellon gave him $500 at that point. Cotsford then kept the Jeep and drove to his house.

Cotsford testified that, a few days later, Castellon called him and asked if he (Castellon) could stay at Cotsford's apartment along with the duffel bags of marijuana, because Castellon was having marital problems. Castellon then moved into the Cotsford apartment. He placed the duffel bags in a closet. Castellon also apparently brought with him a scale and a firearm. Jamie Schneider testified that

---

[1]Cotsford's testimony on various points was not always consistent, as both defense counsel and the government have pointed out. Where the money was counted is an example of his testimony conflicting on various small points.

-3-

she was aware of the marijuana, but was unaware that Castellon had brought with him a scale or a firearm. The firearm was subsequently found by police officers wrapped in a sheet behind the washing machine. Schneider further testified that she had placed dryer sheets in the duffel bags to minimize the odor coming from the marijuana.

At some point, local and federal law enforcement authorities became suspicious. On September 16, 2004, an Aurora police department lieutenant directed investigator Pat Youngquist to investigate Apartment G-108 at 1355 Galena Street in Aurora and to look out for someone named Geronimo. As it turned out, Apartment G-108 is Cotsford's apartment located at 1374 Fulton Street.[2] Youngquist was also directed to look out for a gold automobile, perhaps a Cadillac or a Mercedes Benz. Youngquist determined that the "Geronimo" he was looking for was the defendant, Geronimo Castellon.

Officers then commenced surveillance of the apartment. They saw a gold car in the parking lot, and recognized, based on a photograph they had obtained, the driver as Castellon. They eventually made a traffic stop of the gold car, after determining that Castellon did not have a valid driver's licence. Castellon was arrested after admitting that his driver's license had been revoked.

---

[2]Fulton is parallel to Galena, with the apartment complex in which the Cotsford apartment was located going between the two streets.

The officers then brought a drug-detection dog to the car, who alerted to the back of the car. The officers found a red and black duffel bag in the trunk of the car, containing five packages of marijuana and a dryer sheet. The packages weighed a total of just under six kilograms. The car also contained a brown or tan jacket, in the pocket of which was a Colorado identification card bearing the name Richardo Regla-Campos. There was also a concealed weapon badge between the front seats.

Meanwhile, the officers continuing to conduct surveillance of the Cotsford apartment saw a couple with a small child leave apartment G-108 and get into a car. A check of the license plate revealed it was registered to Jamie Lynn Schneider. At some point, officers stopped the car containing Schneider, Cotsford and their child. Cotsford was taken to jail, Schneider was detained until her father could pick her up, and the child was given to his maternal grandfather.

While at the jail, Cotsford apparently immediately began cooperating with the police, telling them about the trip with Castellon to California. Police officers obtained a warrant to search Cotsford's apartment, where bricks of marijuana, weighing a total of more than forty kilograms, were found in the red and black duffel bags. As indicated, the police found the firearm, a Norinco semi-automatic assault rifle, wrapped in a sheet behind the washing machine. The rifle was operable but lacked a clip for repeat firing.

Castellon was originally charged with five counts: the two counts of conviction, although with a specific amount of marijuana (fifty kilograms), as well as one count alleging interstate travel to facilitate the possession for distribution of a controlled substance, in violation of 18 U.S.C. § 1952(a)(3)(A); one count alleging that Castellon was a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1); and one count alleging that Castellon possessed a firearm during a drug crime, in violation of 18 U.S.C. § 924(c)(1)(A)(I). At trial, the indictment was redacted to eliminate any specific amount of marijuana from the two counts of conviction, and count four was severed and, in conformity with the usual practice in such cases, presented in a separate document after the jury returned its verdict on the remaining counts. The district court acquitted Castellon of the felon-in-possession charge after the close of evidence. The jury acquitted Castellon of the interstate travel count and the possession of a firearm count, but found him guilty of the remaining two counts—possession and conspiracy to posses with intent to distribute a quantity of marijuana.

In preparation for sentencing, the United States Probation Office prepared a presentence report ("PSR"), which calculated an advisory sentence under the United States Sentencing Commission, Guidelines Manual ("USSG"). At several places, the PSR stated that Castellon had been convicted of possession and conspiracy to possess with intent to distribute at least fifty kilograms of

marijuana. In fact, as the redacted indictment indicated, Castellon was convicted of possession and conspiracy to possess "a quantity" of marijuana, because the district court concluded during the trial that the evidence did not support the fifty-kilogram quantity. The evidence at trial showed that the total quantity of marijuana involved—found in the car Castellon was driving and the duffel bags in the apartment—was approximately forty-seven kilograms.

The PSR calculated Castellon's base offense level as twenty, pursuant to USSG §2D1.1(c)(10), which applies to drug crimes involving at least forty but not more than sixty kilograms of marijuana. The PSR recommended a two-level increase for possession of a firearm during and in relation to a drug trafficking crime, under USSG §2D1.1(b)(1). With a total adjusted offense level of twenty-two and a criminal history category III, the PSR determined that the advisory Guideline range was fifty-one to sixty-three months. The government filed a sentencing statement, which specifically noted that the evidence at trial indicated "investigators recovered more than 40 KG of marijuana" and recommending that a base offense level of twenty was appropriate under USSG §2D1.1(c)(10), the same base offense level and USSG provision utilized by the PSR. The government also sought a two-level increase for possession of a firearm during and in relation to a drug trafficking crime.

Defense counsel objected to the two-level increase for possession of a firearm because Castellon "was acquitted of all charges relating to firearms."

Addendum to PSR at A-1, Supp. Vol. III.  Castellon himself submitted a lengthy list of objections as well, in which he argued, at times not very coherently, that he was only convicted of possession of six kilograms of marijuana.[3]

At the sentencing hearing, the court stated that, with respect to defense counsel's objection to the possession of a firearm enhancement, it was "prepared to determine that by a preponderance of the evidence, that the firearm wasn't possessed, consistent with the jury verdict."  Tr. of Sentencing Hr'g at 2, Supp. R. Vol. IV.  The court further indicated it was "not inclined to consider any of [Castellon's own objections]," noting that "[h]e's represented" and further inquiring whether his defense counsel wanted to join any of Castellon's objections, to which defense counsel responded "[n]o."  Id. at 3.  The court then calculated an advisory range of forty-one to fifty-one months, based on a total offense level of twenty and a criminal history category III.  After summarizing the sentencing factors set out in 18 U.S.C. § 3553(a), the district court sentenced Castellon to forty-six months, in the middle of the advisory Guidelines range.

Castellon appeals, arguing:  (1) the district court adopted the factual statements in the PSR, including the erroneous statement that Castellon was convicted of crimes involving at least fifty kilograms of marijuana, which rendered the district court's sentence an abuse of discretion; and (2) the district

_____

[3]Castellon's hand-written list of objections indicates that he was evidently somewhat confused by various court proceedings and misheard much of what was stated by counsel and the court.

court committed reversible error "by failing to address Mr. Castellon's objections to the marijuana amounts for which he was to be sentenced and the underlying evidence, as required by Federal Rule of Criminal Procedure 32 and 18 U.S.C. § 3553(c)." Appellant's Br. at 18-19.

## DISCUSSION

We now review sentences imposed by the district court for reasonableness. United States v. Kristl, 437 F.3d 1050, 1053 (10th Cir. 2006) (per curiam). "We require reasonableness in two respects—'the length of the sentence as well as the *method* by which the sentence was calculated.'" United States v. Lopez-Flores, 444 F.3d 1218, 1220 (10th Cir. 2006) (quoting Kristl, 437 F.3d at 1055); see also United States v. Hall, 473 F.3d 1295, 1310 (10th Cir. 2007). "In determining whether the method by which a sentence is calculated is reasonable, we review the district court's factual findings for clear error and its legal determinations de novo." Hall, 473 F.3d at 1311.

The PSR in this case incorrectly stated that Castellon was convicted of two counts involving more than fifty kilograms of marijuana. In fact, as indicated above, the jury found Castellon guilty of possessing and conspiring to possess "a quantity" of marijuana. However, the PSR also quoted the government's sentencing statement, which explicitly stated that "'as shown by evidence admitted at trial, the investigators recovered more than 40 KG of marijuana.'"

PSR at 3, R. Supp. V. III. The district court adopted the factual findings of the PSR.

Castellon's counsel did not object to the error regarding the amount of marijuana in the counts of conviction. Castellon himself raised objections to the amount of marijuana for which he was convicted, although he did not explicitly object to the error in the PSR. Generally, when a defendant fails to object to a factual finding in the PSR, we review it only for plain error. "Plain error occurs when there is (1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity or public reputation of judicial proceedings." United States v. Gonzalez-Huerta, 403 F.3d 727, 732 (10th Cir. 2005) (en banc). Additionally, where a defendant is represented by counsel, we do not accept pro se filings or allegations. See United States v. Pearl, 324 F.3d 1210, 1216 (10th Cir. 2003) (noting that because defendant "is represented by counsel, we deny his motion to file an additional pro se supplemental brief").[4]

Applying plain error, it is obvious that the PSR contained an error when it stated that the indictment on which Castellon was convicted alleged that the quantity of drugs was more than fifty kilograms. When adopted by the district

_____

[4]This addresses Castellon's argument that the district court erred in failing to address Castellon's pro se objections to the PSR. The district court specifically asked Castellon's counsel if he wished to adopt any of Castellon's objections. Because he did not, and because Castellon was not entitled to hybrid representation, the district court correctly concluded that it need only address objections made by Castellon's counsel.

court, that became an erroneous finding.  The PSR repeated that error, as did the district court, in stating that Castellon's base offense level was 20 "because the offense involved 50 kilograms or more of marijuana, pursuant to [USSG] §2D1.1(c)(10)." Id. at 5.

However, that is not all that the PSR stated with respect to drug quantity. The PSR also noted the government sentencing statement that authorities recovered "more than 40 KG of marijuana."  PSR at 3, R. Supp. Vol. III. Furthermore, the PSR stated that "[t]he Mercedes and the apartment were searched.  5.92 kilograms of marijuana were found in the Mercedes and 40.75 kilograms of marijuana were found in the apartment." Id. at 4.  Those specific factual statements became the district court's factual findings as to drug quantity when adopted by the court.  It is therefore quite clear that the district court made an erroneous factual recitation as to what the indictment *stated*, but correctly found the actual quantity of marijuana recovered as something close to forty-seven kilograms.[5]  The district court was entitled to find the quantity of drugs by a preponderance of the evidence.  Hall, 473 F.3d at 1312 ("Because the post-

---

[5]We note that we have recently held in United States v. Atencio, No. 05-2279, 2007 WL 102977, at *11 (10th Cir. Jan. 17, 2007) that the district court plainly erred when it adopted contradictory factual statements in a PSR, without resolving the conflict pursuant to Fed. R. Crim. P. 32.  Unlike Atencio, we do not have contradictory factual statements here; rather, we have an erroneous description of an indictment, and a clearly correct factual finding as to drug quantity, coupled with the absolute certainty that the district court knew of and sentenced on the basis of the correct factual finding as to drug quantity.

[United States v. ]Booker[, 543 U.S. 220 (2005] Guidelines are discretionary, a district court may continue to find facts, including drug quantity, by a preponderance of the evidence."). There was evidence establishing by a preponderance that the quantity of marijuana was, as found by the court, something close to forty-seven kilograms. Thus, the court did not plainly err in its calculation of drug quantity.[6]

Furthermore, even were we to conclude that the court did err, we would find that Castellon failed to show that his substantial rights were affected. The advisory Guideline range applied to Castellon, USSG §2D1.1(c)(10), covered drug quantities between forty and sixty kilograms. Thus, whether the court was considering a drug quantity of forty-seven kilograms or more than fifty, the base offense level would be the same. When combined with his criminal history, the advisory Guideline range would be from forty-one to fifty-one months.[7] While

_____

[6]Furthermore, there can be no doubt that the district court knew that the quantity of drugs was under fifty kilograms. After all, the court permitted the indictment to be redacted before the case was submitted to the jury to specifically eliminate the "fifty kilograms or more" requirement. The court specifically stated at the close of the government's case that it "[didn't] think that there has been sufficient proof that [Castellon] possessed with intent to distribute more than fifty kilos . . . of marijuana." Tr. of Trial at 263, R. Vol. IV.

[7]As indicated, the PSR actually recommended an advisory range of from fifty-one to sixty-three months, because it recommended a two-level upward adjustment to Castellon's base offense level on the ground that he possessed a firearm in relation to a drug-trafficking crime. Because the district court concluded that the evidence did not support that enhancement, it did not accept the PSR's recommended two-level upward adjustment to Castellon's base offense

(continued...)

-12-

Castellon suggests that the reference to more than fifty kilograms influenced the court to sentence him higher within the range, we have no indication that is so. Indeed, the district court sentenced Castellon to forty-six months, right in the middle of the advisory range. It thus had room to sentence him higher, but did not do so.

Castellon also argues that the PSR contains another erroneous factual statement in that no evidence at trial supported the following averment: "Officers set up surveillance on the apartment and observed the defendant carrying a duffle bag out of the apartment and put it in the gold-colored Mercedes." PSR at 4, R. Supp. V. III. Castellon's counsel did not object to this finding. Castellon objected to it in his pro se filing, which the district court disregarded. Because no proper objection was made to this finding, inasmuch as Castellon was represented by counsel and there was no hybrid representation here, we again review it for plain error. While the evidence at trial does not support this finding, and it is therefore plainly erroneous, Castellon's argument fails at the third stage of our plain error analysis. There was ample evidence at trial connecting Castellon to the marijuana in the duffel bags in the Cotsford apartment and the marijuana in the car he was driving when he was apprehended. It is difficult to conclude that the single erroneous statement made any difference to the district court's

---

[7](...continued)
level.

calculation of drug quantity attributable to Castellon, given that ample evidence. It therefore did not affect Castellon's substantial rights.

Finally, Castellon argues cursorily that his sentence was substantively unreasonable. "[W]hen a sentence falls within the properly-calculated Guidelines range, it is entitled to a rebuttable presumption of reasonableness." United States v. Sanchez-Juarez, 446 F.3d 1109, 1114 (10th Cir. 2006). "Reasonableness review is guided by the factors set forth in 18 U.S.C. § 3553(a), which include the nature of the offense and characteristics of the defendant, as well as the need for the sentence to reflect the seriousness of the crime, to provide adequate deterrence, to protect the public, and to provide the defendant with needed training and treatments." Kristl, 437 F.3d at 1053. Castellon does not develop any argument that his sentence is unreasonable in light of the § 3553(a) factors. We accordingly hold that he has not rebutted the presumption of reasonableness regarding his sentence. Even without any presumption of reasonableness, we can discern nothing in the § 3553(a) factors as applied to this case which would cast doubt upon the propriety of the sentence imposed on Castellon.[8]

---

[8]We note that the Supreme Court has recently heard oral argument in two cases which may affect the way in which we and other courts review sentences for reasonableness. See United States v. Rita, 177 F. Appx. 357 (4th Cir.), cert. granted, 127 S. Ct. 551 (2006) (No. 06-5754); United States v. Claiborne, 439 F.3d 479 (8th Cir.), cert. granted, 127 S. Ct. 551 (2006) (No. 06-5618).

## CONCLUSION

For the foregoing reasons, we AFFIRM Castellon's conviction and sentence.

ENTERED FOR THE COURT


Stephen H. Anderson
Circuit Judge