**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 11, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

ROSALIO O. HERNANDEZ,
also known as Chalio,

Defendant-Appellant.

No. 07-6006
(D.C. No. 06-CR-172-1-R)
(W.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **TYMKOVICH**, **BALDOCK**, and **EBEL**, Circuit Judges.

A federal grand jury sitting in the Western District of Oklahoma returned a

three-count indictment against Rosalio O. Hernandez on federal drug trafficking

charges. Count 1 alleged that, from December 2001 through April 20, 2006,

Mr. Hernandez conspired with Jesus Adolfo Tinajero-Porras (Tinajero) and other

persons to possess with intent to distribute and to distribute 100 kilograms or

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and
collateral estoppel. It may be cited, however, for its persuasive value consistent
with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

more of marijuana in violation of 21 U.S.C. §§ 841(a)(1) and 846.[1]  Count 2

alleged that, on or about July 4, 2002, Mr. Hernandez knowingly and intentionally

distributed approximately fifteen pounds of marijuana to a cooperating witness in

violation of 21 U.S.C. § 841(a)(1).  Count 3 alleged that, on or about January 23,

2005, Mr. Hernandez used a telephone to facilitate the distribution of controlled

substances in violation of 21 U.S.C. § 843(b).

Mr. Tinajero was separately indicted on eleven counts of violating the

federal drug trafficking laws.  The cases against Mr. Hernandez and Mr. Tinajero

were consolidated for purposes of trial and tried jointly before a jury in

September 2006.[2]

At the conclusion of trial, the jury found Mr. Hernandez guilty of Count 1,

the conspiracy charge.  It additionally made a specific factual finding that 100

kilograms or more of marijuana was involved in the conspiracy.[3]  R., Vol. 1, Doc.

46.  The jury found Mr. Hernandez not guilty of Count 2, the distribution charge,

but guilty of Count 3, the telephone facilitation charge.  *Id.*  In January 2007, the

district court sentenced Mr. Hernandez to a term of imprisonment of sixty-three

---

[1]     In Count 1, Mr. Hernandez was also charged with conspiring to distribute
five kilograms or more of cocaine.  With the agreement of the government and
before the case was submitted to the jury, the district court struck the cocaine
allegations from the indictment and verdict form.

[2]     The charges against Mr. Tinajero are not at issue in this appeal.

[3]     We note that one kilogram equals 2.2 pounds and that 100 kilograms
therefore equals 220 pounds.

months on Count 1 and forty-eight months on Count 3, with the sentences to be served concurrently. *Id.*, Doc. 52 at 2. The district court calculated Mr. Hernandez's sentences based on the United States Sentencing Guidelines (Guidelines), which the court recognized are "only advisory now," *id.*, Vol. 5 at 16, in light of the United States Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005).

Mr. Hernandez is now appealing (1) his conviction and sentence on Count 1, the conspiracy charge, arguing insufficient evidence was presented to support the jury's verdict, and (2) the district court's sentencing decision. Exercising jurisdiction under 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291, we affirm.

## I. Background.

### A. Evidence at Trial.

In their respective briefs, the parties have thoroughly summarized the evidence that was presented at trial pertaining to the charges against Mr. Hernandez, and we see no need to duplicate their efforts here. In addition, we note that Mr. Hernandez's challenges to the sufficiency of the evidence are narrowly focused on a single drug transaction that occurred in December 2001. In his brief, Mr. Hernandez has summarized the evidence presented at trial pertaining to that transaction as follows:

> Defendant's only other alleged involvement in the conspiracy was based on evidence Tinajero used a cellular phone subscribed to Defendant to arrange for the transportation of marijuana by Angel

Henry Sosa in December, 2001. On December 12, 2001, Angel Henry Sosa was arrested in Texas, with 1,986 pounds of marijuana. Sosa testified that Tinajero asked him to transport the marijuana during a telephone conversation. Sosa also testified that he had obtained marijuana from Tinajero in Oklahoma City, but he never mentioned [Defendant]. Sosa provided authorities the telephone number used by Tinajero during their December, 2001, conversations, and that telephone number proved to have been subscribed in [Defendant's] name, date of birth and social security number.

Aplt. Br. at 7.

At sentencing, relying on the Sosa/Tinajero transaction in December 2001, the district court found Mr. Hernandez accountable for 1,986 pounds or 902.7 kilograms of marijuana, and this additional drug quantity increased the base offense level for the conspiracy conviction from 26 to 30.[4] The court also granted a two level adjustment for Mr. Hernandez's voluntary debriefings, and a two level adjustment for minor role in the offense, resulting in a total adjusted offense level of 26. Given that Mr. Hernandez had no prior criminal convictions and thus a Criminal History Category of I, the Guidelines provided a sentencing range of sixty-three to seventy-eight months for the conspiracy conviction, and the district court imposed a sentence of sixty-three months.

---

[4] *See* U.S. Sentencing Guidelines Manual § 2D1.1(c)(7) (Nov. 1, 2006) (providing a base offense level of 26 for drug conspiracies involving "[a]t least 100 KG but less than 400 KG of Marihuana"); *id.*, § 2D1.1(c)(5) (providing a base offense level of 30 for drug conspiracies involving "[a]t least 700 KG but less than 1,000 KG of Marihuana").

**B. Arguments on Appeal.**

In this appeal, Mr. Hernandez has summarized his challenges to the sufficiency of the evidence as follows:

> Defendant Hernandez submits that his participation in [the] 1,986 pound marijuana offense in December 2001, based on Tinajero's use of [a] telephone subscribed to [Defendant] to facilitate that offense, were overly conjectural, and did not prove his participation in that conspiracy either beyond a reasonable doubt or by a preponderance of the evidence.
>
> . . . .
>
> . . . [T]he facts in this case do not support a finding beyond a reasonable doubt that Defendant had anything to do with the . . . 1,986 pound marijuana offense in 2001, apart from Tinajero's use of his telephone, and, therefore, that he conspired to possess and distribute 100 kilograms or more of marijuana. Even if the evidence did support his conviction of conspiring to possess 100 kilograms of marijuana without the 1,986 pounds of marijuana, it did not prove by a preponderance of the evidence that the 1,986 pound possession was foreseeable to him. He respectfully applies to this Court for remand for resentencing.

Aplt. Br. at 8-9, 16.

As set forth below, we agree with the government that there was sufficient evidence presented at trial to support both Mr. Hernandez's conspiracy conviction and his sentence.

## II. Analysis.

**A. Sufficiency of the Evidence to Support the Jury's Verdict.**

"Whether the government presented sufficient evidence to support a conviction is a legal question we review *de novo*." *United States v. Dunmire*, 403

-5-

F.3d 722, 724 (10th Cir. 2005). "In undertaking our review, we consider the record in the light most favorable to the government to determine whether a reasonable jury could find guilt beyond a reasonable doubt, based on the direct and circumstantial evidence, together with the reasonable inferences to be drawn therefrom." *Id.* (quotation omitted). Thus, "[w]e may reverse only if no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Brown*, 400 F.3d 1242, 1247 (10th Cir. 2005) (quotations omitted). This is a "restrictive standard of review," and it "provides us with very little leeway." *United States v. Evans*, 970 F.2d 663, 671 (10th Cir. 1992).

As noted above, the jury found Mr. Hernandez guilty of conspiring with Mr. Tinajero to distribute 100 kilograms or more of marijuana in violation of 21 U.S.C. §§ 841(a)(1) and 846. To prove the drug trafficking conspiracy alleged in this case, the government was required to prove that: "(1) [Mr. Hernandez] agreed with [one] or more persons to import and possess with intent to distribute 100 kilograms or more of marijuana, (2) [Mr. Hernandez] knew at least the essential objectives of the conspirac[y], (3) [Mr. Hernandez] knowingly and voluntarily became a part of the conspirac[y], and (4) interdependence existed among the alleged coconspirators." *United States v. Arras*, 373 F.3d 1071, 1074 (10th Cir. 2004). "By necessity, the government may establish these elements by direct or circumstantial evidence." *Evans*, 970 F.2d at 668. But as we have

-6-

repeatedly emphasized in our decisions in this area, "we cannot sustain a conspiracy conviction if the evidence does no more than create a suspicion of guilt or amounts to a conviction resulting from piling inference on top of inference." *United States v. Horn*, 946 F.2d 738, 741 (10th Cir. 1991).

Assuming membership in the conspiracy is proven, however, the government need not produce "evidence of direct participation in the commission of [each] substantive offense or other evidence from which participation might fairly be inferred." *Pinkerton v. United States*, 328 U.S. 640, 646 (1946) (rejecting holding in *United States v. Sall*, 116 F.2d 745 (3d Cir. 1940)). To the contrary, as the district court instructed the jury in this case, the doctrine of vicarious liability plays a critical role in the context of conspiracy cases. The court's vicarious liability instruction read as follows, and we note that Mr. Hernandez did not object to the instruction:

> Every conspirator is guilty of the illegal acts that are done as part of and in furtherance of the conspiracy even though those acts are done solely by coconspirators. If you are satisfied beyond a reasonable doubt that, at the time an alleged offense was committed, a Defendant had entered into and continued to be a member of an unlawful conspiracy as I have defined that for you; and if you further find beyond a reasonable doubt that a coconspirator of the Defendant committed the offense while the conspiracy continued to exist and in furtherance of that unlawful conspiracy or as an object of that conspiracy, then you may find the Defendant guilty of that offense even though he was not the person who actually committed or personally aided and abetted in the commission of the offense.

R., Vol. 1, Doc. 47 at 51; *see also id.* at 37 (jury instruction stating that "[o]nce a person becomes a member of a conspiracy, he is held legally responsible for the acts of the other members done in furtherance of the conspiracy, even though he was not present or aware that the acts were being committed"); *Evans*, 970 F.2d at 678 n.20 ("Under *Pinkerton*, a defendant is liable for any crimes committed by a coconspirator if those crimes (1) were within the scope of the conspiracy or (2) were reasonably foreseen as a necessary or natural consequence of the unlawful agreement.") (citing 328 U.S. at 646-48).

As the government has pointed out in its brief, Mr. Hernandez "does not attack the conviction for conspiracy itself." Aplee. Br. at 6. Instead, he is attacking only "the jury's finding that the conspiracy involved 100 kilograms or more of marijuana, a finding that subjects [him] to a statutory penalty of not less than 5 years nor more than 40 years of imprisonment under 21 U.S.C. § 841(b)(1)(B)(vii)." Aplee. Br. at 6. Having carefully reviewed the evidence put forth by the government at trial, we conclude the jury's finding that the conspiracy involved 100 kilograms or more of marijuana was supported by the evidence.

To begin with, Brian Long testified at trial that, from 2000 through 2004, he purchased large quantities of marijuana from Mr. Tinajero on a weekly basis and then distributed the marijuana to third persons. R., Vol. 3 at 237-45. In addition, Mr. Long identified Mr. Hernandez as a person he met through

Mr. Tinajero, and he testified that Mr. Hernandez delivered marijuana to him on behalf of Mr. Tinajero. *Id.* at 252-53. Specifically, Mr. Long testified that Mr. Hernandez delivered approximately three to fifteen pounds of marijuana to him at a time, three or four times a month from early 2000 to the latter part of 2002. *Id.* at 253. Even viewing this testimony conservatively (*i.e.*, assuming it involved only eight months in 2000 and eight months in 2002 for a total of twenty-eight months, and that a total of only nine pounds of marijuana was being delivered each month, for a total of 252 pounds or 114.5 kilograms), this evidence was sufficient to establish that Mr. Hernandez was part of a drug distribution conspiracy involving 100 kilograms or more of marijuana.

As noted by the government, Mr. Long also "testified that [Mr. Hernandez] delivered the fifteen pounds of marijuana for Tinajero and that Long paid [Mr. Hernandez] $500 per pound for a total of $7,500 in cash at delivery," and "[t]his transaction was the subject of Count 2 of the Indictment, on which the jury returned a verdict of not guilty." Aplee. Br. at 9. Although the not guilty verdict on Count 2 indicates the jury found that Mr. Long's testimony regarding this specific transaction was not credible, the not guilty verdict on Count 2 does not necessarily undercut the remainder of Mr. Long's testimony regarding the total amounts of marijuana that Mr. Hernandez delivered to him. Indeed, in reviewing for sufficiency of the evidence, "[c]redibility choices are resolved in favor of the jury's verdict." *Horn*, 946 F.2d at 741. As a result, viewing the evidence in the

-9-

light most favorable to the government, as we are required to do, we must assume the jury found that the remainder of Mr. Long's testimony was credible.[5]

This is an important point because Mr. Long's testimony not only provided direct evidence of Mr. Hernandez's participation in a drug distribution conspiracy involving in excess of 100 kilograms of marijuana, but his testimony also linked Mr. Hernandez to the conspiracy as of December 2001 and thus the time of the transaction involving the 1,986 pounds of marijuana. Consequently, based on Mr. Long's testimony, and given the additional evidence showing that Mr. Tinajero used a telephone that had been subscribed in Mr. Hernandez's name to coordinate the transaction involving the 1,986 pounds of marijuana, the jury could reasonably have found that: (1) Mr. Hernandez was knowingly involved with Mr. Tinajero in a large-scale drug distribution conspiracy in December 2001; and (2) he is therefore vicariously liable for the transaction involving the 1,986 pounds of marijuana even if he did not participate in that transaction.

---

[5] Because "all reasonable inferences and credibility choices must be made in support of the jury's verdict," *Evans*, 970 F.2d at 671 (quotation omitted), we will not assume, as the government does in its brief, that the jury's not guilty verdict on Count 2 means "it is likely that [the jury] discounted Long's testimony in calculating quantity also," Aplee. Br. at 13. In fact, we note that Mr. Hernandez's counsel was able to elicit testimony from Mr. Long that provided a specific reason for the jury not to believe his testimony regarding the fifteen-pound transaction, namely that Mr. Long had failed to mention the transaction in his initial discussions with the police as a cooperating witness. R., Vol. 3 at 264-68.

Accordingly, we conclude that the evidence concerning the marijuana transactions in which Mr. Hernandez was directly involved (*i.e.*, Mr. Long and the 114.5 kilograms), or, alternatively, the evidence concerning the transaction for which he could be found vicariously liable (*i.e.*, the December 2001 transaction and the 1,986 pounds or 902.7 kilograms), provided a sufficient evidentiary basis for the government to meet the 100-kilogram threshold.

**B. The District Court's Sentencing Decision.**

As we have discussed in a number of recent published decisions, the Supreme Court established a new appellate-level standard of review for federal sentences in *Booker*:

> In *United States v. Booker*, . . . the Supreme Court held that the mandatory application of the Guidelines to judge-found facts (other than a prior conviction) violates the Sixth Amendment. 125 S. Ct. at 749-50. Rather than declare the Guidelines unconstitutional, however, the Court excised the provision of the federal sentencing statute that made the Guidelines mandatory, 18 U.S.C. § 3553(b)(1), effectively making the Guidelines advisory. The Court also excised 18 U.S.C. § 3742(e), which set forth the standard of review on appeal, and held that the proper standard of review for sentences imposed post-*Booker* is "reasonableness."

*United States v. Kristl*, 437 F.3d 1050, 1053 (10th Cir. 2006) (per curiam).

In light of *Booker*, "[w]e will set aside [Mr. Hernandez's] sentence only if it is procedurally or substantively unreasonable." *United States v. Geiner*, 498 F.3d 1104, 1107 (10th Cir. 2007). We recently described these two concepts as follows:

A procedurally reasonable sentence reflects the sentencing court's calculation of the applicable advisory Guidelines range and its application of the § 3553(a) factors. *See United States v. Atencio*, 476 F.3d 1099, 1102 (10th Cir. 2007). In addition, to impose a procedurally reasonable sentence, the sentencing court must "afford defendants their rights under the Federal Rules of Criminal Procedure." *Id.* A sentence is substantively reasonable when it "reflects the gravity of the crime and the § 3553(a) factors as applied to the case." *Id.*

Moreover, although the Guidelines are now advisory, we accord a properly calculated Guidelines sentence a presumption of substantive reasonableness, *see* [*Kristl*, 437 F.3d at 1054-55], an approach the Supreme Court recently upheld as constitutional, *Rita v. United States*, __ U.S. __, 127 S. Ct. 2456 . . . (2007). . . .

. . . With this in mind, we first determine whether the District Court correctly applied the Guidelines, reviewing the court's findings of fact for clear error and its legal conclusions de novo.

*Geiner*, 498 F.3d at 1107-08.

Mr. Hernandez challenges the procedural reasonableness of his sentence for the conspiracy conviction. He argues insufficient evidence existed to support the district court's factual finding that he was responsible for the transaction that occurred in December 2001 involving the 902.7 kilograms of marijuana and therefore had a base offense level of thirty under the Guidelines. *See* U.S. Sentencing Guidelines Manual § 2D1.1(a)(3) and (c)(5) (Nov. 1, 2006) (providing a base offense level of thirty for drug conspiracies involving "[a]t least 700 KG but less than 1,000 KG of Marihuana"). This is his sole challenge to his sentence, and thus we do not need to address any other procedural issues or the question of substantive reasonableness.

-12-

It is well established that, "[u]pon [his] conviction of conspiracy to possess with intent to distribute [marijuana], [Mr. Hernandez] was accountable for that drug quantity which was within the scope of the agreement and reasonably foreseeable to [him]." *United States v. Arias-Santos*, 39 F.3d 1070, 1078 (10th Cir. 1994). Moreover, Mr. Hernandez "may be sentenced on the basis of [marijuana] possessed by another coconspirator, so long as the amount is within the scope of the conspiracy and foreseeable by [Mr. Hernandez]." *Id.* This principle is explicitly recognized in the Guidelines under the rubric of "Relevant Conduct," as the Guidelines provide that, "in the case of a jointly undertaken criminal activity," a defendant's base offense level "shall be determined on the basis of . . . all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity." U.S. Sentencing Guidelines Manual § 1B1.3(a)(1)(B) (Nov. 1, 2006).

The district court's "assessment of the drug quantity attributable to [Mr. Hernandez] is a fact finding determined by a preponderance of the evidence which we review for clear error." *Arias-Santos*, 39 F.3d at 1078. Here, the court concluded that the transaction involving the 902.7 kilograms of marijuana was relevant conduct for purposes of sentencing Mr. Hernandez, finding that the transaction was "reasonably foreseeable, . . . particularly since his own telephone [was] being used in the transaction." R., Vol. 5 at 8. As the court explained, "[Mr. Hernandez] was convicted of the conspiracy and being a co-conspirator

-13-

with Mr. Tinajero and I think this transaction would certainly fall within the scope of that conspiracy and would be foreseeable." *Id.* at 8-9.  As set forth above, the evidence at trial (*i.e.*, the testimony of Brian Long regarding Mr. Hernandez's monthly marijuana deliveries from early 2000 to the latter part of 2002) showed that, in December 2001, Mr. Hernandez was an active participant along with Mr. Tinajero in a large-scale drug distribution conspiracy. Thus, we have no difficulty concluding that the district court's sentencing decision was supported by a preponderance of the evidence and was not clearly erroneous.

The judgment of the district court and Mr. Hernandez's convictions and sentences are AFFIRMED.

Entered for the Court

Timothy M. Tymkovich
Circuit Judge