**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 15, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

JOSEPH N. WHITE,

Defendant - Appellant.

No. 07-3019

(D. Kansas)

(D.C. No. 06-CR-10186-MLB)

**ORDER AND JUDGMENT**[*]

Before **TACHA**, **ANDERSON**, and **GORSUCH**, Circuit Judges.

Pursuant to a plea agreement, defendant and appellant Joseph N. White pled

guilty to one count of knowing possession of a firearm in furtherance of a drug

trafficking crime, in violation of 18 U.S.C. § 924(c).  The district court *sua*

*sponte* advised the parties it was considering an upward departure from the

advisory Guideline range.[1]  After giving the parties an opportunity to respond, the

---

[*]This order and judgment is not binding precedent except under the
doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

[1]While we use the word "departure" throughout most of this opinion, we
occasionally use the word "variance."  The district court used language suggestive
of both, and, as our discussion below indicates, it is of no moment whether we

(continued...)

court departed upward from the Guideline range by eighty-seven months, and sentenced White to 147 months' imprisonment. He appeals his sentence, which we affirm.

## BACKGROUND

On April 12, 2006, during an investigation by the Sedgwick County, Kansas, Sheriff's Office, White sold approximately .43 grams of crack cocaine to a confidential informant at a convenience store in Wichita, Kansas. During the sale, White's two young children were in his car at the convenience store. Law enforcement officers conducting surveillance saw White, another man, and two young children drive from White's residence to the convenience store in a Ford Crown Victoria.

On April 25, 2006, White sold .40 grams of crack cocaine to a confidential informant at White's residence. During the sale, White's two young children were inside his residence, which is within 1,000 feet of a school. On April 27, 2006, law enforcement officers executed a search warrant at White's residence and found 11.45 grams of crack cocaine, a box of baggies, a digital scale, two

[1](...continued)
call the above-Guidelines sentence in this case a "departure" or a "variance." A variance occurs "[w]hen a court enhances or detracts from the recommended range through application of § 3553(a) factors." United States v. Atencio, 476 F.3d 1099, 1101 n.1 (10th Cir. 2007). A departure occurs "when a court reaches a sentence above or below the recommended Guidelines range through application of Chapters Four or Five of the Sentencing Guidelines." Id.

razor blades, and a plate. The plate, scale and razor blades were covered with a powdery residue. The officers also found White's four-year-old son in a bedroom, in which they also found a loaded 9 mm Glock pistol on a closet shelf. A magazine containing additional rounds was on the shelf next to the gun. In the living room, officers found a loaded .45 caliber Glock Model 21 on the top shelf of a computer desk.[2] Beneath White's clothing in another bedroom closet, the officers found an Olympic Arms PCR3.223 caliber rifle with two 30-round magazines, a double magazine adapter, an LED light, and a thumb-activated laser light. In that same bedroom, the officers found more ammunition magazines for the Glock handguns, a gun box for a .357 Glock, one round of .357 ammunition, and a plastic cover for a digital scale that had marijuana and cocaine residue on it. Additionally, the officers found a rifle in a gun case in the trunk of a Ford Crown Victoria parked in the driveway. This was the same car used to deliver the crack cocaine to the convenience store on April 12.

On May 9, 2006, the confidential informant called White and arranged to purchase crack cocaine. The confidential informant met with White's co-defendant, Shonnetta Gabriel, in Wichita and bought .45 grams of crack cocaine. The residence where the transaction took place is within 1,000 feet of an elementary school. On May 16, the confidential informant purchased .40 grams

---

[2]Although both Glocks were loaded, apparently neither had a bullet in the chamber. PSR at ¶ 24, R. Vol. V.

of crack cocaine from White at an Autozone in Wichita. Law enforcement personnel conducting surveillance of White's residence saw him leave his residence and drive to the Autozone. On May 19, the confidential informant called White and arranged to purchase crack cocaine at the same Autozone. Law enforcement officers conducting surveillance of White's residence saw another black male, Wendale Gasper, Sr., leave the residence and drive to the Autozone, where he sold .40 grams of crack cocaine to the confidential informant. On May 23, the confidential informant called White and arranged another purchase of crack cocaine at the same Autozone. Law enforcement officers observed co-defendant Gabriel leave White's residence, drive to the Autozone, and sell .37 grams of crack cocaine to the confidential informant.

On May 30, officers again executed a search warrant at White's residence. Two of White's children, ages eight and two, were in the living room. In the southeast bedroom, where White was sleeping with his four-year-old son, officers found an unloaded 9mm Taurus handgun in a gun case on a top shelf in the closet, a plastic baggie with 2.54 grams of crack cocaine under the mattress, and White's wallet containing $245 on the nightstand. In the kitchen, officers found three scales, one of which had a powdery residue which tested positive for cocaine. In the dining room, officers found one round of 9 mm ammunition in a cell phone box. In the children's bedroom, they found a plate on which there was a razor blade and a white powdery residue.

On June 7, 2006, the confidential informant called White and asked to purchase some crack cocaine. A few minutes later, the confidential informant received a call from co-defendant Gabriel concerning the sale. Law enforcement personnel conducting surveillance of White's house saw White and Gabriel drive away and meet another man. A short time later, officers followed Gabriel to a gas station where Gabriel met a female. Following this meeting, officers stopped the female and found crack cocaine in her vehicle. Officers watched Gabriel then drive and pick up White. Later that same day, Gabriel called the confidential informant and arranged to meet at a restaurant in Wichita. They did so, and the confidential informant purchased .37 grams of cocaine from Gabriel. The restaurant is within 1,000 feet of an elementary school. Later that evening, officers stopped White's vehicle for a traffic violation and found four baggies containing approximately 4.42 grams of crack cocaine in White's underwear and a baggie containing an additional .19 grams of crack cocaine in the driver's side door of the car.

On August 22, 2006, White was charged in a sixteen-count indictment with: one count of conspiracy to possess with intent to distribute crack cocaine; four counts of distributing crack cocaine; three counts of distributing crack cocaine within 1,000 feet of a public school; two counts of possession with intent to distribute crack cocaine within 1,000 feet of a public school; two counts of possession of a firearm in furtherance of a drug trafficking crime; one count of

possession with the intent to distribute crack cocaine; one count of maintaining a residence within 1,000 feet of a public school for the purpose of distributing crack cocaine; and two counts of being an unlawful user of a controlled substance in possession of a firearm.

On October 20, 2006, White pled guilty to one count of possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c). As stated in his plea agreement, White admitted the following:

> On April 27, 2006, in Wichita, Kansas, the defendant possessed a Glock Model 17, 9mm handgun, and a Glock Model 21, .45 caliber handgun. At the time he possessed these firearms the defendant was engaged in the distribution of crack cocaine. These firearms were for the defendant's protection and used by him to further his drug trafficking.

R. Vol. I, doc. 27 at 2. In exchange for his plea of guilty to this one count (count 12 of the 16-count indictment), the government agreed not to file any additional charges against White, to recommend a sentence at the low end of the applicable guideline range, and in any event, not to exceed 60 months, to recommend a three-level reduction for acceptance of responsibility and to not request an upward departure if White agreed not to request a downward departure.

In preparation for sentencing, the United States Probation Office prepared a presentence report ("PSR"). The PSR noted that the minimum statutory term of imprisonment for a violation of 18 U.S.C. § 924(c) is five years, and that the Guideline sentence is that minimum statutory term. The PSR found no factors

-6-

warranting a departure from the Guideline sentence or a sentence outside the advisory Guideline range.  Neither the government nor White objected to the PSR.

On December 8, 2006, the district court sent a letter to all counsel stating that it was contemplating an upward departure to a sentence greater than five years.  The court explained its reasons as follows:

> For reasons not apparent in the record, defendant has been able to negotiate a guilty plea to count 12 of a 16 count indictment charging numerous serious drug and firearm violations.  Count 12 charges a violation of 18 U.S.C. § 924(c) which carries a mandatory minimum sentence of five years imprisonment and maximum sentence of life in prison.  Although the advisory guidelines do not offer any explanation for what seems to be an illogical result, the guideline sentence is the same as the mandatory minimum sentence.  I am hard pressed to understand how the Sentencing Commission would come to such a conclusion when Congress presumably believed that a § 924(c) violation was sufficiently serious to carry a maximum sentence of life imprisonment.  Nevertheless, [United States Sentencing Guideline ("USSG")] § 2K2.4, Application Note 2(B), provides for an upward departure.[3]

---

[3]USSG § 2K2.4(b) provides, "if the defendant . . . was convicted of violating section 924(c) . . . the guideline sentence is the minimum term of imprisonment required by statute."  USSG § 2K2.4, comment. (n.2(B)) provides as follows:

> Upward Departure Provision–In a case in which the guideline sentence is determined under subsection (b), a sentence above the minimum term required by 18 U.S.C. § 924(c) . . . is an upward departure from the guideline sentence.  A departure may be warranted, for example, to reflect the seriousness of the defendant's criminal history in a case in which the defendant is convicted of an 18 U.S.C. § 924(c) . . . offense but is not determined to be a career offender.

(continued...)

-7-

Section 5K2.21 of the advisory guidelines allows me to " . . . depart upward to reflect the actual seriousness of the offense based on conduct (1) underlying a charge dismissed as part of a plea agreement in the case or underlying a potential charge not pursued in the case as part of a plea agreement or for any other reasons; and (2) that did not enter into a determination of the applicable guideline range."

The Tenth Circuit has recognized the application of § 5K2.21 in both pre-Booker and post-Booker cases: United States v. Gilmore, 62 Fed. Appx. 857 (10th Cir. 2003), and United States v. Zunie, 444 F.3d 1230, 1237 (10th Cir. 2006).

. . .

Taken together, then, 18 U.S.C. § 3661[4] and the advisory guidelines allow me to consider many more things about defendant than the guideline sentence, and most of them are unfavorable to him.

Letter dated 12/08/06 at 1-2, R. Vol. I, tab 44, Ex. A. The court then discussed the plea agreement, including White's acknowledgment that the government's recommendation of a five-year sentence was not binding on the court. The court recounted the plea colloquy, in which the court discussed relevant conduct and informed White that "all these other counts of this indictment, even though you're

---

[3](...continued)
USSG § 2K2.4, comment. (n.2(B)).

[4]18 U.S.C. § 3661 provides as follows:

No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence.

18 U.S.C. § 3661.

not pleading guilty to these counts, can be taken into consideration in setting your

sentence." Id. at 4.  The court subsequently described all of White's conduct

underlying the remaining counts of the sixteen-count indictment, concluding:

> Notwithstanding these events in April 2006, defendant
> continued to sell crack cocaine in May 2006, either personally or
> through others, including his codefendant.  On May 30, 2006,
> Defendant's residence was again searched pursuant to a warrant.
> Three children, ages 2, 4 and 8 were in the residence along with an
> unloaded weapon, crack cocaine and drug paraphernalia.  Then, in
> June 2006, defendant participated in additional crack cocaine sales.

Id. at 5.  The court's letter went on to state:

> I must consider certain factors under 18 U.S.C. § 3553.  But
> keep in mind that I am providing this information pursuant to Rule
> 32(h)[5], not as an all-inclusive list of the factors which I may
> ultimately consider after the defendant has had the opportunity to
> comment. . . .
>
> According to the presentence report, defendant is 28 years old
> and has been using illegal drugs on a regular basis for 13 years.  He
> has five children and one stepchild who he apparently does not
> support, at least on a regular basis.  His employment history is
> somewhat irregular but his educational attainments are sufficient that
> he could work regularly and support his dependents should he be
> inclined to do so.  In other words, there is no demonstrable economic
> reason for defendant to be selling drugs and taking money from a
> girlfriend, assuming that selling drugs can ever be justified by

---

[5]Fed. R. Crim. P. 32(h) provides:

**Notice of Possible Departure from Sentencing Guidelines.**  Before
the court may depart from the applicable sentencing range on a
ground not identified for departure either in the presentence report or
in a party's prehearing submission, the court must give the parties
reasonable notice that it is contemplating such a departure.  The
notice must specify any ground on which the court is contemplating a
departure.

economic need. On the contrary, based on the record, I assume defendant sells drugs to support his own drug habit and because he is too lazy to work.

All of the charges in the indictment are very serious. Defendant's conduct demonstrates complete lack of respect for the law. It is clear that even when confronted by authorities with selling drugs, he was not deterred from doing so. The public needs to be protected from that type of conduct and, in particular, his children need to be protected. The conduct of a parent who exposes young children to the drug trade is beneath contempt. I don't have to dwell on the fact that children who are exposed to drugs are more likely to become involved in the illegal drug trade and the use of illegal drugs. Anyone who believes otherwise is either terminally naive or completely ignorant of the drug culture.

. . .

I asked [the probation officer who prepared the PSR] to give me some information regarding the types of sentences which would have been available had defendant pled to other counts in the indictment. . . .

Finally, while I have not seen the presentence report regarding Shonnetta Gabriel, defendant's codefendant, it is my understanding that her sentencing range is 46-57 months. Gabriel is charged in only four of the 16 counts of the indictment. Defendant is charged in all 16. There would appear to be no sentencing disparity if defendant receives a sentence greater than 60 months if, for no other reason, because his criminal conduct is substantially more serious than that of Gabriel.

Id. at 6. On December 12, the court sent another letter supplementing his

December 8 letter, stating as follows:

U.S.S.G. § 2K2.4, Application Note 7 (2006 Guidelines Manual) states, in pertinent part: "The Commission has not established a fine guideline range for the unusual case in which there is no conviction for the underlying offense, although a fine is authorized under 18 U.S.C. § 3571." It is clear from reading the

-10-

other application notes that an underlying offense would include a drug trafficking crime. Thus, the Sentencing Commission would view this case as "unusual" because the parties have agreed to allow defendant to plead guilty to the 924(c) count alone, rather than in addition to one or more underlying drug counts.

I believe this analysis of the commentary supports my view that this is an "unusual" case in which a sentence greater than 60 months will be reasonable.

Letter dated 12/12/06, R. Vol. I, tab 44, Ex. B.

The court invited the parties to submit memoranda addressing the issues set forth in the court's two letters, and White did so. In his memorandum, White pointed out that he "was not a distributor of large amounts of drugs, or considered by law enforcement officers to be a high level drug dealer," and that "the total amount of crack cocaine involved in this case is merely 21.39 grams." Response to Court's Notice to Depart at 7, R. Vol. I, tab 34. Furthermore, White argued he "has no felony criminal history, or criminal record of dealing drugs in the past." Id. White also offered a DVD of an interview with his sister, "who describes in a very intimate and personal way, the abuse suffered by she and Mr. White as children [of a] life time drug addict, who abused and abandoned her children in exchange for men and drugs." Id. at 8-9. White then stated that "[t]he type of offenses with which [he] is charged are not at all representative of his true character" and he "is a gentle and respectful young man, but also a seat of inner conflict." Id. at 9 (footnote omitted). He also pointed out that "[a]lthough numerous firearms were located in Mr. White's house and in his automobile

-11-

trunk, [which belonged to him . . .], White did not present those firearms or threaten to use them in any drug transaction." Id. at n.2. With respect to the allegation that he endangered his children, he noted that "these children belonged also to Shonetta Gabriel, their mother. If this regrettable factor should result in an increase in Mr. White's sentence, should it not likewise result in an increase of Ms. Gabriel's sentence?" Id. at 11.

Following a hearing at which both parties presented argument, the district court issued its sentencing decision, in which the court "adhere[d] to [its] belief that an upward departure from the advisory guideline sentence is warranted." Sentencing Dec. at 1, R. Vol. I, tab 44. After observing that the law regarding sentence departures is "not totally settled" in our circuit, the district court stated that it was obligated "to consult both the advisory guidelines and the statutory factors set forth in 18 U.S.C. § 3553(a)." Id. at 3. The court held that its two letters adequately discussed the advisory guidelines and explained "that an upward departure is allowable under the advisory guidelines." Id.

The court then turned to its analysis of the 18 U.S.C. § 3553(a) factors. In considering the "history and characteristics" of White, the court observed, "[t]here is no question that the circumstances of defendant's upbringing were far worse than the 'normal' law-abiding, two parent, nurturing home which some might contend to be a base-line for consideration of a defendant's history and characteristics." Id. at 4. After articulating the critical question as "whether

defendant's unfortunate history militates against an upward departure," the court

concluded, "when all the circumstances and statutory factors are considered,

defendant's unfortunate childhood does not prevent an upward departure." Id. at

4-5. The court then commented on White's involvement of his children in his

drug transactions, stating, "[t]he court supposes that it is possible for some

persons to feel love and concern for the welfare of one's children while, at the

same time, exposing young children to drug trafficking and the danger of

firearms, but the court cannot identify with such persons." Id. at 5. It further

stated:

> What the court does know with certainty from hands-on
> experience of sentencing defendants (as opposed to reading about
> sentencing) is that cases of this type fall in the category of a self-
> fulfilling prophecy. In other words, the child of a parent who uses
> and/or sells illegal drugs is very likely to follow in the parent's
> footsteps, which is exactly what defendant has done. When, as here,
> a defendant takes his small children with him when engaging in drug
> transactions, that defendant has to be separated from his children.
> This falls within the category of protecting the public from further
> crimes of the defendant.

Id. The court then explained its sentence:

> In an effort to formulate a sentence which will be acceptable under
> the advisory guidelines and the § 3553(a) factors, the court requested the
> probation officer to prepare a sentence calculation which takes into
> consideration the offense of conviction (count 12, possession of a firearm
> in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)
> which carries a minimum and advisory guideline sentence of 60 months)
> plus the "underlying offense" charged in count 4, possession with intent to
> distribute cocaine base within 1,000 feet of a school in violation of 21
> U.S.C. §§ 842(a)(1) and 860. . . .

-13-

Using defendant's criminal history category II and a total offense level of 26, the advisory guideline range for count 4 becomes 70-87 months. The court will impose a 60 month sentence on count 12 enhanced by an upward departure of 87 months for a controlling sentence of 147 months. The court finds that such a sentence is consistent with the advisory guidelines and is sufficient, but not greater than necessary, to comply with the sentencing purposes set forth in § 3553(a).

Id. at 5-6.

White appeals, arguing the upward departure or variance to a 147-month sentence was procedurally and substantively unreasonable.

## DISCUSSION

Since United States v. Booker, 543 U.S. 220 (2005), "we review sentencing decisions for reasonableness, which has both procedural and substantive components." United States v. Atencio, 476 F.3d 1099, 1102 (10th Cir. 2007). Procedural reasonableness involves the manner in which a court calculates a sentence. "In setting a procedurally reasonable sentence, a district court must calculate the proper advisory Guidelines range and apply the factors set forth in § 3553(a)." Id. Substantive reasonableness relates to the overall length of the sentence. "A substantively reasonable sentence ultimately reflects the gravity of the crime and the § 3553(a) factors as applied to the case." Id.. Most recently, the Supreme Court in Gall v. United States, 128 S. Ct. 586, 591 (2007), made it clear that "courts of appeals must review all sentences–whether inside, just

-14-

outside, or significantly outside the Guidelines range–under a deferential abuse-of-discretion standard." Id. at 591.

White argues the district court: did not "provide a clear statement of reasons sufficient to justify the extreme upward departure of 87 months in addition to an advisory guideline sentence of 60 months;" "consider[ed] inappropriate factors such as disagreement with the government's plea negotiation decisions and the policy decisions of the Sentencing Commission;" failed to explain why the court's upward departure resulted in a sentence sufficient but not greater than necessary to comply with 18 U.S.C. § 3553(a); failed to explain why the factors upon which the court relied, either individually or collectively, constituted "extraordinary circumstances justifying the extreme upward departure;" and "imposed [a] substantively unreasonable [sentence] after consideration of the § 3553(a) factors." Appellant's Op. Br. at 1-2.

**I. Procedural reasonableness:**

We begin by considering our standard of review for White's claim that the district court imposed his sentence in a procedurally unreasonable way. The government, citing United States v. Romero, 491 F.3d 1173 (10th Cir. 2007), argues that, since White failed to object following imposition of sentence to the government's calculation of his sentence or explanation for the sentence imposed, we must review his claim of procedural unreasonableness for plain error. White responds that:

as <u>Romero</u> makes clear, the law prior to that decision was inconsistent and confusing as to whether an objection had to be made after a procedurally erroneous sentence in order to preserve that error. Since <u>Romero</u> was decided well after the sentencing in this case, it would be manifestly unjust to apply that rule in this case.

Appellant's Reply Br. at 1. White concedes, however, that at least two of our decisions prior to <u>Romero</u> had "expressly held that a contemporaneous objection to a procedural error in sentencing was required to avoid a plain error standard." <u>Id.</u>

We agree with the government that White was sufficiently on notice that a contemporaneous objection is required to avoid a plain error standard, and <u>Romero</u> simply reiterated and further clarified that. As in <u>Romero</u>, it is clear from the record in this case that, although White presented arguments against the court's proposed upward departure from the advisory Guidelines range, he "did not raise the procedural objection he now asserts after the district court imposed sentence." <u>Romero</u>, 491 F.3d at 1176. We took the opportunity in <u>Romero</u> to reassert "[o]ur conviction that the requirement of contemporaneous objection to procedural errors is consistent with our precedent and represents a reasonable burden on defendants. . . . " <u>Id.</u> at 1177.[6] Thus, a plain error standard of review applies to White's allegations of procedural unreasonableness.

---

[6]Our decision in <u>Romero</u> gave multiple reasons why its holding was consistent with our precedent, despite any confusion engendered by other cases.

-16-

"We find plain error only when there is (1) error, (2) that is plain, (3) which affects substantial rights, and (4) which seriously affects the fairness, integrity, or public reputation of judicial proceedings." Id. at 1178. "The plain error standard presents a heavy burden for an appellant, one which is not often satisfied." Id. See United States v. Toro-Pelaez, 107 F.3d 819, 827 (10th Cir. 1997) ("[T]he plain-error exception to the contemporaneous-objection rule is to be used sparingly, solely in those circumstances in which a miscarriage of justice would otherwise result.") (further quotation omitted).

White has failed to establish that the district committed any error which affected his substantial rights. He argues that the district court failed to "clearly set forth the factors upon which it relied to justify either its decision to grant an upward departure or the extreme degree of the departure imposed." Appellant's Br. at 12. He also argues the court considered inappropriate factors and failed to explain why departing upward on the basis of a dismissed count and running it concurrent to the count of conviction resulted in a reasonable sentence. We disagree with White's complaints about the district court's methodology.

First, as the district court noted, USSG § 5K2.21 permits the court to "depart upward to reflect the actual seriousness of the offense based on conduct (1) underlying a charge dismissed as part of plea agreement in the case or underlying a potential charge not pursued in the case as part of a plea agreement or for any other reasons." Thus, the district court asked the probation office to

-17-

calculate a sentence for count four (possession with the intent to distribute crack cocaine within 1,000 feet of a school), which was the count underlying count twelve (the count of conviction).[7]  The connection between counts four and twelve is, therefore, obvious.  Furthermore, the five-year sentence imposed under § 924(c) is required to be consecutive to any sentence for the underlying offense.

Second, rather than failing to explain his reasons for departing upward from five years, the court's letters and sentencing decision amply explained its reasons for doing so.[8]  White had distributed cocaine and possessed multiple firearms while his young children were present; he continued to sell cocaine even after being confronted by law enforcement authorities and having his residence

---

[7]As indicated, White pled guilty to count twelve–possession of a firearm in furtherance of a drug trafficking crime.  He admitted during his change of plea hearing that "[a]t the time he possessed these firearms the defendant was engaged in the distribution of crack cocaine," R. Vol. I, doc. 27 at ¶ 2.  He admitted to selling crack cocaine from his residence, which was within 1,000 yards of a school, which is also where the firearms were found.

[8]White spends a considerable amount of time arguing that the court's upward departure (or variance), from sixty months to 147 months, was extraordinary, and therefore required extraordinary circumstances.  This argument was based upon our prior jurisprudence.  See, e.g., United States v. Cage, 451 F.3d 585 (10th Cir. 2006); United States v. Bishop, 469 F.3d 896 (10th Cir. 2006), cert. denied, 127 S. Ct. 2973 (2007).  However, these cases were overruled by Gall v. United States, 128 S. Ct. 586 (2007), which specifically rejected "an appellate rule that requires 'extraordinary' circumstances to justify a sentence outside the Guidelines range" or an appellate court's "use of a rigid mathematical formula that uses the percentage of a departure as the standard for determining the strength of the justifications required for a specific sentence."  Id. at 595.  The Gall Court did, however, state that "appellate courts may . . . take the degree of variance into account and consider the extent of a deviation from the Guidelines."  Id. at 595.

searched; he had been charged with sixteen counts, all of which were serious, but ended up only pleading guilty to one; his conduct demonstrated a complete lack of respect for the law; the public and his young children needed to be protected from his conduct; and he was harming his children by exposing them to the drug trade. Even if some of the reasons the district court gave were of questionable propriety, or were extraneous comments, those reasons were overwhelmed by the permissible reasons given and were not structurally fatal to the whole sentencing proceeding. It is clear that the judge not only stated, but relied principally upon, appropriate reasons, under any standard of review. Thus, even if there was error, White cannot demonstrate that any procedural error affected his substantial rights.

## II. Substantive reasonableness:

Gall has made clear that we review "all sentences–whether inside, just outside, or significantly outside the Guidelines range–under a deferential abuse-of-discretion standard." Gall, 128 S. Ct. at 591. A substantively reasonable sentence reflects the gravity of the crime and the § 3553(a) factors as applied to the case. See United States v. Hernandez, 509 F.3d 1290, 1297-98 (10th Cir. 2007). The sentence in this case satisfies that standard. The court found an upward departure was appropriate under USSG §5K2.21 "to reflect the actual seriousness of the offense based on conduct. . .underlying a charge dismissed as part of a plea agreement. . ." It further stated its awareness that it must consider the § 3553(a) factors. The court discussed, and the record reflects, the nature and

characteristics of White, the seriousness of his criminal conduct, the need to protect society from him, and the need for deterrence. We cannot say that, under a deferential abuse-of-discretion standard, the court abused its discretion in imposing the sentence it did on White.

## CONCLUSION

For the foregoing reasons, the sentence is AFFIRMED.

ENTERED FOR THE COURT

Stephen H. Anderson
Circuit Judge