FILED
United States Court of Appeals
Tenth Circuit

October 16, 2009

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

CARLOS ARMENDARIZ,

Defendant-Appellant.

No. 08-2284
(D.C. No. 2:95-CR-00353-BB-5)
(D. N.M.)

---

ORDER AND JUDGMENT[*]

---

Before **HENRY**, Chief Judge, **BRORBY**, Senior Circuit Judge, and **HARTZ**, Circuit Judge.

---

Carlos Armendariz appeals his conviction following a jury trial of

possession with intent to distribute more than five kilograms of cocaine and

conspiracy to possess with intent to distribute more than five kilograms of

cocaine, his sentence of 324 months in prison, and the denial of his motion for

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

acquittal under Rule 29 of the Federal Rules of Criminal Procedure. Mr. Armendariz argues that the evidence presented at trial was insufficient, as a matter of law, to show his knowing participation in a conspiracy or demonstrate that he exercised constructive possession of the narcotics in question. We have jurisdiction over this direct appeal under 28 U.S.C. § 1291. Because the evidence presented at trial, viewed in the light most favorable to the prosecution, sufficiently supported the convictions, we affirm.

## EVIDENCE

The evidence presented at trial showed that in late May of 1995, Richard Orosco and Edwina Coddington were living together in a house in Las Cruces, New Mexico, with Ms. Coddington's two children. According to Ms. Coddington's testimony, Mr. Orosco was a drug trafficker, and two of his associates in the drug trade were Carlos Armendariz ("Mr. Armendariz") and Alberto Armendariz ("Alberto"). Ms. Coddington traveled with Mr. Orosco to Juarez, Mexico, so that he could meet with Mr. Armendariz and Alberto, and make arrangements for Mr. Orosco to transport drugs. At one point, Alberto told Ms. Coddington he never entered the United States because he was wanted by law enforcement. Ms. Coddington testified that in the normal course of procedures, the cocaine would be delivered to their house in Las Cruces, where it would be put into fiberglass containers and delivered to other locations in the United States. She testified that the loads were originally small enough to pack in a car, but then

grew to the point where bigger trailers were used. She testified that Mr. Orosco and Mr. Armendariz did most of the packing of the cocaine into the trailers for the loads, but sometimes other people who she did not know were involved.

On May 29, 1995, law enforcement agents were conducting surveillance of Mr. Orosco and Ms. Coddington's house, acting on information from various sources. At about six o'clock at night, they saw a white panel van driven by Mr. Orosco arrive at the house and back into the garage. Two or three minutes later they saw Mr. Armendariz arrive in his car. Ms. Coddington testified that after Mr. Orosco and Mr. Armendariz arrived, she went into the garage and saw that the van was loaded with kilograms of cocaine. In the garage at the time were Mr. Orosco, Mr. Armendariz, and Mr. Danny Golay, who evidently served as a babysitter for Ms. Coddington's children, did other small jobs around the house, and also helped load and unload cocaine. Ms. Coddington testified that the men had laid out fiberglass containers and were packing the containers with cocaine and wrapping the containers with plastic so they could load it. After a while, the agents saw both the van and Mr. Armendariz leave.

About one o'clock in the afternoon on May 31, Mr. Golay and Mr. Orosco maneuvered a pop-up camper trailer into the garage and closed the door. About an hour and a half after that, Mr. Armendariz arrived at the house and went in the front door. A little later, the garage door opened and Mr. Orosco and Mr. Armendariz came out and stood in the driveway for a bit of time.

Mr. Armendariz left the house at 5:40 p.m. At a little after 10:00 p.m., Mr. Orosco backed a black Chevrolet Blazer up to the garage and hooked the trailer to it. He proceeded to drive around the block a number of times and also drive one way down a street and then turn around and come back the other direction. One of the law enforcement officers testified that he believed that Mr. Orosco was making "heat runs" to see if law enforcement officers were following him. R., Vol. 3, at 52. Mr. Orosco then returned to the house. A little before midnight, he and Ms. Coddington, Mr. Golay, and Rhonda Siebenlist, who was Ms. Coddington's cousin, left the house in the Blazer, pulling the camper. The Blazer eventually turned onto highway 70 and left Las Cruces headed towards Alamogordo, New Mexico.

As they were driving out of Las Cruces, a Toyota pickup driven by Mr. Gerardo Ochoa joined up with the Blazer and traveled along with it. Ms. Coddington testified that one of Mr. Armendariz's jobs was to check to make sure that a checkpoint in Alamogordo was open before they left the house. She testified that Mr. Ochoa was to drive "interference" for the Blazer, making sure checkpoints were still open and that everything was proceeding as planned. In Alamogordo, the agents observed Mr. Ochoa pull off the highway and make a call from a gas station. The Blazer continued on for a little ways and then pulled over into a truck stop and waited for Mr. Ochoa to catch up. The pair of vehicles traveled on together until the law enforcement officers following the vehicle

-4-

decided to have them stopped outside of Roswell, New Mexico. A K-9 officer had his dog conduct a sniff test that indicated the presence of drugs in the camper and a subsequent search conducted at the state police office revealed over 1,100 pounds of cocaine in the vehicle.

Ms. Coddington agreed to cooperate with the law enforcement officers after her arrest. She testified that after her arrest the officers had her call Mr. Armendariz and tell him that the men had been arrested and that she and Ms. Siebenlist had been released. She testified that Mr. Armendariz "kind of panicked and said he was going to get ahold [sic] of Alberto to see what to do." R., Vol. 3. at 99.

Law enforcement officers searched the house in Las Cruces after the arrests. They found forty-one fiberglass forms at the residence as well as black bags containing resin for the fiberglass. They also found pieces of the camper that had been removed to make room for the cocaine. In addition, they found other trailers that had false bottoms welded onto them to hold fiberglass forms.

Officers also conducted a search of Mr. Ochoa's house after the arrest. There they found a note with a number that corresponded to a pager number in Ms. Coddington's address book under the name "Carlos." The officers also found a rental agreement for a storage unit in Mr. Armendariz' name. When officers searched Mr. Armendariz's residence they found more flatbed trailers with false bottoms, one of which was registered to Mr. Orosco and showed that he had

purchased it when he lived at the house in Las Cruces. Small pieces of fiberglass were found both in the trailers and in the trunk of a car that was parked at Mr. Armendariz's house. The agents also seized phone records showing that Mr. Armendariz had placed phone calls to Mr. Orosco and Ms. Coddington's house. They also seized an application for a vehicle registration in Mr. Armendariz' name for the vehicle he was seen driving when he arrived at Mr. Orosco's house on May 29.

After the search, subpoenaed records showed that an individual named "Osvaldo Casada" was listed as the subscriber for eleven or twelve pagers. Among these pagers were the pager that Ms. Coddington called to contact Mr. Armendariz after her arrest, a pager belonging to Mr. Ochoa that was seized, and a pager that Mr. Orosco had on him when he was arrested.

## ANALYSIS

> We review the sufficiency of the evidence to support a jury's verdict and the denial of Mr. [Armendariz'] motion for judgment of acquittal de novo. We ask whether a reasonable jury could find a defendant guilty beyond a reasonable doubt, viewing the evidence in the light most favorable to the government and drawing reasonable inferences therefrom.

*United State v. Vigil*, 523 F.3d 1258, 1262 (10th Cir.), *cert. denied,* 129 S. Ct. 281 (2008) (citation omitted). "This is a restrictive standard of review, and it provides us with very little leeway." *United States v. Hernandez*, 509 F.3d 1290, 1295 (10th Cir. 2007) (quotation marks omitted). As noted above,

Mr. Armendariz seeks review of the sufficiency of the evidence supporting both his possession and conspiracy convictions.

Conviction For Possession With Intent To Distribute.

As to his conviction for possession with intent to distribute, Mr. Armendariz argues that the evidence did not show that he exercised constructive possession of the cocaine. Aplt. Br. at 1. Mr. Armendariz argues that the most a reasonable juror could conclude was that he was a minor player tasked with one job, to determine whether the checkpoint was open.

"To sustain a conviction of possession with intent to distribute under 21 U.S.C. § 841(a)(1), the government must prove that a defendant: (1) possessed a controlled substance, (2) knew he possessed a controlled substance, and (3) intended to distribute the controlled substance." *United States v. Burkley*, 513 F.3d 1183, 1189 (10th Cir.), *cert. denied*, 128 S. Ct. 2979 (2008) (quotation marks omitted). Possession may be actual or constructive. *United States v. Winder*, 557 F.3d 1129, 1137 (10th Cir.), *cert. denied*, 129 S. Ct. 2881 (2009). "Constructive possession may be established by circumstantial evidence and may be joint among several individuals." *United States v. McKissick*, 204 F.3d 1282, 1291 (10th Cir. 2000) (quotation marks omitted). "Constructive possession exists where a person knowingly has ownership, dominion, or control over the narcotics and the premises where the narcotics are found." *United States v. McCullough*, 457 F.3d 1150, 1168 (10th Cir. 2006) (quotation marks and brackets omitted).

But "[w]hen the contraband may be attributed to more than one individual, constructive possession requires some nexus, link, or other connection between the defendant and the contraband." *United States v. Triana*, 477 F.3d 1189, 1194 (10th Cir. 2007) (quotation marks omitted). "We have alternatively defined constructive possession of a controlled substance as an appreciable ability to guide the destiny of the drug." *McCullough*, 457 F.3d at 1168 (quotation marks omitted).

> A jury may–and often must–consider circumstantial evidence in determining whether the Government has established the elements of a 21 U.S.C. § 841(a)(1) offense. In considering whether the Government's evidence is sufficient to support the jury's verdict, we remain mindful that circumstantial evidence is entitled to the same weight as direct evidence. To sustain a criminal conviction, the Government's evidence must be substantial or raise more than a mere suspicion of guilt, but it need not disprove every other reasonable theory of the case.

*Winder*, 557 F.3d at 1137-38 (quotation marks and citations omitted).

Here, we agree with the district court that, viewing the evidence in the light most favorable to the government and drawing reasonable inferences therefrom, a reasonable jury could have found beyond a reasonable doubt that Mr. Armendariz had constructive possession over the cocaine. The jury could have reasonably inferred from the testimony presented at trial, especially the testimony of Ms. Coddington, that, as phrased by the district court, "Mr. Armendariz was the organizer and supervisor of the load" of cocaine. R., Vol. 1, at 85. A jury could have reasonably inferred from Ms. Coddington's testimony that Mr. Orosco made

cocaine deliveries into the United States for Mr. Armendariz and Alberto, and that Mr. Armendariz handled the business in the United States because Alberto never left Mexico. Ms. Coddington testified that Mr. Orosco and Mr. Armendariz generally handled the packaging of the cocaine shipments, that they had both loaded the cocaine for the shipment in question, and that Mr. Armendariz had been in charge of making sure that the checkpoint was open before the shipment left. Further, the law enforcement officers involved testified that in their extensive experience, the person actually transporting the narcotics is very low on the chain of command, with the leaders of the trafficking organization avoiding actual possession of the narcotics. From the above, a reasonable juror could have concluded beyond a reasonable doubt that a sufficient nexus existed between Mr. Armendariz and the cocaine, *Triana*, 477 F.3d at 1194, and that he had an appreciable ability to guide its destiny, *McCullough*, 457 F.3d at 1168.

Conspiracy Conviction.

As to his conspiracy conviction, Mr. Armendariz argues that the evidence did not show his "knowing participation in a conspiracy," Aplt. Br. at 1, and that the most a reasonable jury could have concluded was that he was acquainted with individuals who were transporting drugs, not that he had "entered into a conspiratorial agreement regarding those drugs," *id*. at 8.

In order to prove the conspiracy charge, the government had to show that (1) Mr. Armindariz agreed with one or more persons to import and possess with

-9-

intent to distribute 5 kilograms or more of a mixture or substance containing a detectable amount of cocaine, (2) he knew the essential objectives of the conspiracy; (3) he knowingly and voluntarily took part in the conspiracy, and (4) the co-conspirators were interdependent. *See* R., Vol. 1, at 10; 21 U.S.C. § 841(a)(1) & (b)(1)(A); 21 U.S.C. § 846; *Hernandez*, 509 F.3d at 1295. As with possession "[b]y necessity, the government may establish these elements by direct or circumstantial evidence." *Id.* (quotation omitted). "But as we have repeatedly emphasized in our decisions in this area, we cannot sustain a conspiracy conviction if the evidence does no more than create a suspicion of guilt or amounts to a conviction resulting from piling inference on top of inference." *Id.*

Here, a reasonable jury could have concluded beyond a reasonable doubt that Mr. Armendariz was a knowing participant in the conspiracy. Here, the pagers used by the various members of the trafficking ring were all tied to the same subscriber. Mr. Armendariz helped package the cocaine in question in this load and usually helped package the cocaine for transportation. He expressed no surprise at being contacted by Ms. Coddington after the load of cocaine was intercepted and the agents found more trailers with false bottoms at Mr. Armendariz' house and fiberglass fragments in both the trailers and the trunk of a car parked at Mr. Armendariz' house. Consequently, a reasonable jury could have concluded that Mr. Armendariz "knowingly and voluntarily became a part of the conspiracy." *Id.*

CONCLUSION

The judgment of the district court is AFFIRMED.

Entered for the Court


Robert H. Henry
Chief Circuit Judge